David T. Biderman, Bar No. 101577
DBiderman@perkinscoie.com
Aaron R. Goldstein, Bar No. 239423
AGoldstein@perkinscoie.com
PERKINS COIE LLP
1888 Century Park E., Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.843.1284

Attorneys for Defendants
CALIBER HOME LOANS, INC.;
SUMMIT MANAGEMENT COMPANY, LLC;
and U.S. BANK TRUST, N.A., AS TRUSTEE
FOR LSF9 MASTER PARTICIPATION TRUST
(erroneously sued as U.S. Bancorp. Inc. dba U.S.
Bank Trust, N.A., as Trustee for LSF9 Master
Participation Trust)

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELIZABETH NG, an individual,<br><br>             Plaintiff,<br><br>     v.<br><br>CALIBER HOME LOANS, INC., et al.,<br><br>             Defendants. | Case No.  15-cv-8042<br><br>**NOTICE OF REMOVAL** |

NOTICE OF REMOVAL

1  **TO THE CLERK OF THE ABOVE-ENTITLED COURT:**

2      **PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1332, 1441(b) and

3  1446, defendants Caliber Home Loans, Inc. ("Caliber"), Summit Management

4  Company, LLC ("Summit") and U.S. Bank Trust, N.A., as Trustee for LSF9 Master

5  Participation Trust (erroneously sued as U.S. Bancorp. Inc. dba U.S. Bank Trust,

6  N.A., as Trustee for LSF9 Master Participation Trust) ("U.S. Bank"), collectively

7  "Defendants," hereby remove to this Federal Court the state court action described

8  below.

9      1.    On or about September 10, 2015, Plaintiff Elizabeth Ng ("Plaintiff")

10 commenced an action in the Superior Court of the State of California in and for the

11 County of San Bernardino, entitled *Elizabeth Ng v. Caliber Home Loans Inc., et al.*,

12 as case number CIVDS1512945 (the "Complaint"). A copy of the Complaint and

13 all pleadings received by Defendants is attached hereto as **Exhibit A**.

14     2.    Defendants were first served with a copy of the Summons and

15 Complaint on September 14, 2015.

16     3.    This Notice is timely because it is filed and served within 30 days of

17 service of process. 28 U.S.C. § 1446(b).

18                    **Diversity Jurisdiction**

19     4.    This Court has original jurisdiction over this action under 28 U.S.C.

20 § 1332. Diversity jurisdiction exists because the parties are diverse and the matter

21 in controversy exceeds $75,000, exclusive of interests and costs. Therefore,

22 pursuant to 28 U.S.C. § 1441(b), this action may be removed to federal court.

23     5.    <u>Diversity of Citizenship</u>. Complete diversity of citizenship exists in

24 that:

25         (a)    Plaintiff is a citizen of the State of California. (*See* Complaint,

26 ¶ 1.)

27         (b)    Caliber is a corporation incorporated under the laws of the state

28 of Delaware with its principal place of business in the State of Texas. (*See* Caliber's

1    Corporate Certification and Notice of Interested Parties filed concurrently
2    herewith.)

3         (c)    Defendant Summit is a limited liability company organized
4    under the laws of the State of Delaware. Citizenship of a limited liability company
5    is determined by the citizenship of its members. *Johnson v. Columbia Properties*
6    *Anchorage*, LP, 437 F.3d 894, 899 (9th Cir. 2006). The citizenship of each member
7    of an unincorporated association or partnership must be considered in determining
8    diversity. *Carden v. Arkoma Associates*, 494 US 185, 195 (1990); *Rockwell Int'l*
9    *Credit Corp. v. United States Aircraft Ins. Group*, 823 F2d 302, 304 (9th Cir.
10   1987). Summit's only member is Caliber, with citizenship stated above in
11   paragraph 5, subsection (b). (*See* Summit's Corporate Certification and Notice of
12   Interested Parties filed concurrently herewith);

13        (d)    Defendant U.S. Bank is a national banking association whose
14   Articles of Association designate the location of its main office as Wilmington,
15   Delaware. *Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006). (*See* U.S. Bank's
16   Corporate Certification and Notice of Interested Parties filed concurrently
17   herewith).

18        (e)    The defendants identified as "DOES 1-20" in the Complaint are
19   fictitious parties against whom no cause of action can be validly alleged. To the
20   best of Defendants' information and belief, no fictitiously designated defendant has
21   been served with process, and these fictitious parties may be ignored for purposes
22   of determining removal.

23        6.    <u>Amount in Controversy</u>. The amount in controversy exceeds $75,000.
24   "'In actions seeking declaratory or injunctive relief, it is well established that the
25   amount in controversy is measured by the value of the object of the litigation.'"
26   *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir.2002) (quoting *Hunt v.*
27   *Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1997)). This
28   action concerns a mortgage loan in the amount of $308,000.00, secured by

real property in Rancho Cucamonga, California. (*See* Complaint ¶¶ 1, 11) Where the object of the action is to stop an impending foreclosure or determine the validity of a completed foreclosure, the value of the property or the loan amount securing the property determines the amount in controversy. *See, e.g., Nguyen v. Wells Fargo Bank, N.A.*, 749 F.Supp.2d 1022, 1028 (N.D. Cal. 2010) (finding statutory minimum met based on either amount of loan or value of property). Plaintiff alleges a number of claims for relief relating to the assignment of the deed of trust and related recordings, foreclosure, and efforts to collect the loans, including claims for permanent declaratory and injunctive relief, restitution, statutory damages, and economic damages. The Complaint further seeks to stop the sale of the subject real property. Thus, the object of the litigation is, at a minimum, the deed of trust securing a $308,000.00 loan.   Further, Plaintiff seeks an unquantified award of statutory damages and economic damages..

7.    <u>Consent of Defendants</u>. All defendants consent to removal.

8.    <u>Intradistrict Assignment</u>. Pursuant to 28 U.S.C. § 1441(a), assignment to the United States District Court for the Southern District of California is proper because Plaintiff filed this action in the Superior Court of California, County of San Bernardino.

9.    <u>Attachment of Pleadings</u>. As required by 28 U.S.C. § 1446(a), true and correct copies of all pleadings and orders served upon Defendants are being filed herewith. A true and correct copy of the state court's docket is attached hereto as **Exhibit B**.

10.    <u>Notice to State Court/Plaintiff</u>. Pursuant to 28 U.S.C. § 1446(d), Defendants will promptly serve on Plaintiff and file with the Superior Court a "Notice to Adverse Party of Removal to Federal Court." Pursuant to Federal Rule of Civil Procedure 5(d), Defendants will also file with this Court a "Certificate of Service of Notice to Adverse Party of Removal to Federal Court."

1       **WHEREFORE**, Defendants requests that this Court consider this Notice of

2 Removal as provided by law governing the removal of cases to this Court, that this

3 Court take such steps as are necessary to achieve the removal of this matter to this

4 Court from San Bernardino County Superior Court, and that this Court will make

5 such other orders as may be appropriate to effect the preparation and filing of a true

6 record in this cause of all proceedings that may have been had in the state court

7 action.

8

9 DATED: October 14, 2015        **PERKINS COIE LLP**

10                       By: */s/ Aaron R. Goldstein*

11                          Aaron R. Goldstein, Bar No. 239423
                         AGoldstein@perkinscoie.com

12                       Attorneys for Defendants

13                       CALIBER HOME LOANS, INC.;
                      SUMMIT MANAGEMENT COMPANY, LLC;

14                       and U.S. BANK TRUST, N.A., AS TRUSTEE
                      FOR LSF9 MASTER PARTICIPATION

15                       TRUST (erroneously sued as U.S. Bancorp. Inc.
                      dba U.S. Bank Trust, N.A., as Trustee for LSF9

16                       Master Participation Trust)

17

18

19

20

21

22

23

24

25

26

27

28

## PROOF OF SERVICE BY OVERNIGHT DELIVERY

I am a citizen of the United States and employed in Los Angeles County, California. I am over the age of eighteen years and not a party to the within-entitled action. My business address is 1888 Century Park E., Suite 1700, Los Angeles, California 90067-1721. On October 14, 2015, I deposited with Federal Express, a true and correct copy of the within documents:

### NOTICE OF REMOVAL

in a sealed envelope, addressed as follows:

> Kaivan Harouni, Esq.
> Steven Nguyen, Esq.
> HAROUNI LAW GROUP
> 5950 Canoga Avenue, Suite 550
> Woodland Hills, California 91367
> Telephone: 310-693-8333
> Facsimile: 310-494-9499
> Email: KH@Harounilaw.com
> Email: S.Nguyen@Harounilaw.com
>
> Attorneys for Plaintiff,
> ELIZABETH NG

Following ordinary business practices, the envelope was sealed and placed for collection by Federal Express on this date, and would, in the ordinary course of business, be retrieved by Federal Express for overnight delivery on this date.

I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

Executed on October 14, 2015, at Los Angeles, California.


_____
Jose Gamez

# EXHIBIT A

1  **HAROUNI LAW GROUP**
   Kaivan Harouni [SBN 256582]
2  Email:KH@HarouniLaw.com
   Steven Nguyen [SBN 285635]
3  Email: s.nguyen@HarouniLaw.com
   5950 Canoga Avenue, Suite 550
4  Woodland Hills, California 91367
   Telephone: 310-693-8333
5  Facsimile: 310-494-9499

6  Attorneys for Plaintiff Elizabeth Ng

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

SEP 1 0 2015
MANUEL HENRY ANDRIANO
By _____
                        Deputy

7

8            **SUPERIOR COURT FOR THE STATE OF CALIFORNIA**

9               **FOR THE COUNTY OF SAN BERNARDINO**

10                                              CIVDS1512945

11  ELIZABETH NG, an individual,          Case No:

12            Plaintiff,                  **VERIFIED COMPLAINT FOR:**

13     vs.                                1.  VIOLATION OF CIVIL CODE § 2923.55;
                                          2.  VIOLATION OF CIVIL CODE § 2923.6;
14                                        3.  VIOLATION OF CIVIL CODE § 2923.7;
    CALIBER HOME LOANS, INC., a corporation;  4.  VIOLATION OF CIVIL CODE § 2924.10;
15  U.S. BANCORP, INC. dba U.S. BANK TRUST,  5.  VIOLATION OF CIVIL CODE § 2924.17;
    N.A., AS TRUSTEE FOR LSF9 MASTER    6.  VIOLATION OF CIVIL CODE § 2924f;
16  PARTICIPATION TRUST, an unknown business  7.  NEGLIGENCE & NEGLIGENCE PER SE;
    entity; SUMMIT MANAGEMENT COMPANY,  8.  VIOLATION OF BUSINESS &
17  LLC, a limited liability company; and DOES 1      PROFESSIONS CODE § 17200.
    through 20, inclusive,
18                                        **DEMAND FOR JURY TRIAL**
19            Defendants.

20

21

22

23

24

25

26

27

28

_____
                        **VERIFIED COMPLAINT**
                                                              Page 7

COMES NOW Plaintiff Elizabeth Ng alleges as follows:

### PARTIES

1.    At all times relevant herein, Elizabeth Ng ("Ms. Ng" or "Plaintiff") was, and is an individual who owned and resided in the property located at 11933 Timber Mountain Ct., Rancho Cucamonga, CA 91739 (the "Property" or the "Plaintiff's home").

2.    Upon information and belief, Defendant Caliber Home Loan, Inc., ("Caliber") is, and at all times mentioned herein, was a corporation doing business in the County of San Bernardino, State of California.

3.    Upon information and belief, Defendant U.S. BANCORP, INC. dba U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST ("US Bank"), is, and at all times mentioned herein, was an unknown business entity doing business in the County of San Bernardino, State of California.

4.    Upon information and belief, Defendant SUMMIT MANAGEMENT COMPANY, LLC ("Summit") is, and at all times mentioned herein, was a limited liability company doing business in the County of San Bernardino, State of California.

5.    Ms. Ng is ignorant of the true names and capacities of Defendants sued herein as DOES 1 through 20, inclusive, and therefore sue these Defendants by these fictitious names. Ms. Ng will amend this complaint to allege their true names and capacities when ascertained. Ms. Ng is informed and believe and thereon allege that each of the fictitiously named Defendants are responsible in some manner for the occurrences herein alleged, and that Ms. Ng's damages as herein alleged were proximately caused by those Defendants.

6.    The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendant(s) named herein as Does 1-20, inclusive, and each of them, are unknown to Ms. Ng, who therefore sues said Defendant(s) by their fictitious names under Code Civ. Proc. § 474. Ms. Ng asks leave of Court to amend her Complaint to include the true names and capacities of said Defendant(s) when the same have been ascertained.

///

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

– 1 –

**VERIFIED COMPLAINT**

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

7.  Ms. Ng is informed and believes, and thereon alleges, that at all times material to this Complaint, each of the Defendants, and each of the Defendants fictitiously named in this Complaint, in addition to acting for himself, herself, or itself and on his, his or its own behalf individually, are and were acting as the agent, servant, employee and representative of, and with the knowledge, consent and permission of, and in conspiracy with, each and all of the Defendants and within the course, scope and authority of that agency, service, employment, representation, and conspiracy.

8.  Ms. Ng further alleges on information and belief that the acts of each of the Defendants were fully ratified by each and all of the Defendants. Specifically, and without limitation, Ms. Ng alleges on information and belief that the actions, failures to act, breaches, conspiracy, and misrepresentations alleged herein and attributed to one or more of the specific Defendants were approved, ratified, and done with the cooperation and knowledge of each and all of the Defendants.

## JURISDICTION

9.  The transactions and events which are the subject matter of this Complaint all occurred within the County of San Bernardino, State of California.

10. The Property is located within the County of San Bernardino, State of California.

## FACTUAL ALLEGATIONS

11. On or about March 22, 2008, Ms. Ng took out a loan for the Property from Countrywide Bank, FSB ("Countrywide") in the amount of $308,000.00. (A true and correct copy of the Deed of Trust [recorded with the San Bernardino County Recorder's Office as Instrument No. 2008-0137058, on March 28, 2008] is attached hereto as **Exhibit A**, and hereinafter incorporated by reference.) Per the deed of trust, ReconTrust Company was the named trustee. At all relevant times, Ms. Ng has used, and is using, the Property as her principal place of residence.

12. Bank of America ("BOA") became the loan servicer of Ms. Ng's home loan after purchasing Countrywide in or about July 2008.

13.   On July 14, 2011, Recontrust Company, <u>N.A.</u> ("RCNA") recorded a Substitution of Trustee ("Substitution #1") against the Property. (A true and correct copy of the Substitution #1 [recorded with the San Bernardino County Recorder's Office as Instrument No. 2011-0286086] is attached hereto as **Exhibit B**, and hereinafter incorporated by reference.) Per Substitution #1, RCNA was substituted as the new trustee under the Deed of Trust.

14.   Also on July 14, 2011, RCNA recorded a Corporation Assignment of Deed of Trust ("Assignment #1") against the Property. (A true and correct copy of Assignment #1 [recorded with the San Bernardino County Recorder's Office as Instrument No. 2011-0286087] is attached hereto as **Exhibit C**, and hereinafter incorporated by reference.) Per Assignment #1, BOA was assigned all beneficial interest in the Deed of Trust.

15.   In or about late 2013, Ms. Ng began experiencing financial troubles due to lack of business and work projects. Around this time, Ms. Ng contacted BOA for home loan assistance options. A BOA agent informed Ms. Ng, however, that because she was current on her home loan there were no options available.

16.   Without any home loan assistance, in or about early January 2014, Ms. Ng became unable to make her mortgage payment.

17.   Around this time, Ms. Ng contacted BOA to again inquire about home loan assistance options. BOA immediately informed Ms. Ng to apply for a loan modification.

18.   In or about February 2014, Ms. Ng submitted a loan modification application, complete with all necessary information, to BOA.

19.   Shortly thereafter, in or about February 2014, Ms. Ng contacted BOA for a modification update. BOA agent, Nick, informed Ms. Ng that BOA had received her application and it was under review. Ms. Ng asked Nick if there was anyone she should speak to when she called in the future. Nick said he did not see that her file had been assigned a single point of contact, but that she could call and speak to him going forward.

///

///

///

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

20. Over the next six months or so, Ms. Ng frequently contacted BOA for modification updates. Each time, Ms. Ng requested to speak to Nick, but he was always unavailable. Instead, Ms. Ng was always connected to a different BOA agent who was unfamiliar with her file and financial circumstances. Although BOA agents confirmed that her application was still under review, they repeatedly requested she submit and re-submit duplicative documents and information because said information had been misplaced or expired. In April 2014, Ms. Ng was even instructed to submit an entirely new application. Despite her frustration, Ms. Ng timely complied with each and every document request.

21. On or about May 9, 2014, Ms. Ng received a letter from BOA informing her that her single point of contact was Craig Macier. (A true and correct copy of BOA's May 9, 2014 Letter is attached hereto as **Exhibit D**, and hereinafter incorporated by reference.)

22. On or about June 20, 2014, Ms. Ng contacted BOA for a modification update. Unable to reach Mr. Macier, another BOA agent informed Ms. Ng that her application was complete and sent for further review.

23. In or about late July 2014, Ms. Ng again contacted BOA for a modification update. Again, Ms. Ng was unable to reach Mr. Macier. Instead, Ms. Ng was connected to another BOA agent named Melanie, who informed Ms. Ng that application was denied several weeks ago due to negative Net Present Value (NPV) results. Ms. Ng asked Melanie for an explanation of her results because she did not understand anything about the NPV test. Melanie asked Ms. Ng to call back and speak to her single point of contact because she was not familiar with her file. Before hanging up Ms. Ng asked if she could challenge BOA's findings or have BOA re-review her application. Melanie said that she could appeal BOA's decision, but she must do so immediately. Ms. Ng then asked Melanie to leave a message with Mr. Macier requesting an immediate call back. Ms. Ng did not receive a call back from Mr. Macier.

24. In or about early August 2014, Ms. Ng appealed BOA's denial.

25. About a week later, BOA informed Ms. Ng that it was standing by its original decision and denying her application.

///

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

26. In or about early October 2014, Ms. Ng contacted BOA to ask about other non-foreclosure options. With Mr. Macier unavailable, Ms. Ng spoke to another BOA agent named Sandra. Sandra immediately encouraged to again apply for a loan modification.

27. In or about mid-October 2014, Ms. Ng submitted another loan modification application, complete with all necessary information, to BOA.

28. A few days later, Ms. Ng contacted BOA for a modification update. Ms. Ng asked to speak to Sandra or Mr. Macier but both were unavailable. Ms. Ng spoke to a different BOA agent who confirmed her application had been received. The agent asked Ms. Ng to submit additional information to BOA to complete her application. Ms. Ng immediately submitted the requested documents, and BOA thereafter confirmed her application was complete a few days later.

29. On or about October 29, 2014, Ms. Ng received a letter from BOA informing her that, effective "November 16, 2014, the servicing of your…loan will transfer to Caliber." (A true and correct copy of BOA's October 29, 2014 Letter is attached hereto as **Exhibit E**, and hereinafter incorporated by reference.) Furthermore, the letter stated that "If you are currently being considered for a loan modification or other foreclosure avoidance program, your new servicer [Caliber] is aware of your current status and will have all your documents. Please contact [Caliber] to complete the process…" Upon information and belief, Caliber had actual and constructive knowledge of BOA's handling of Ms. Ng's home loan. Therefore, BOA is jointly liable for all the wrongdoings of BOA.

30. Shortly thereafter, Ms. Ng contacted BOA about the letter and her pending loan modification application. Ms. Ng stated she was afraid that her application would not be processed properly because of the change in servicers. A BOA agent assured Ms. Ng not to worry, and that her application would sent to Caliber.

31. In or about early December 2014, Ms. Ng contacted Caliber for an update concerning her loan modification application. A Caliber agent informed Ms. Ng that due to the recent servicing change, Caliber did not have all her information in their system. The agent told Ms. Ng to contact Caliber after the new year, as her file should be updated and complete by then.

///

– 5 –
**VERIFIED COMPLAINT**

32. In or about early January 2015, Ms. Ng again contacted Caliber for an update concerning her modification application. Unfortunately, the Caliber agent informed Ms. Ng that all her information had not yet been updated in their system and to allow Caliber more time to get her file situated.

33. In or about February 2015, Ms. Ng again contacted Caliber regarding her application. This time, however, a Caliber agent informed Ms. Ng that there was no application associated with her file and that she should submit a modification application immediately to avoid foreclosure.

34. In or about March 2015, Ms. Ng submitted a new loan modification application, complete with all necessary information, to Caliber.

35. Sometime thereafter, in or about March 2015, Ms. Ng contacted Caliber for a modification update. A Caliber agent informed Ms. Ng that Caliber had received her application and that additional information was needed. At this time, Ms. Ng asked if her file had been assigned a single point of contact. The Caliber agent informed Ms. Ng that he did not see that a single point of contact had yet been assigned to her file, but he would put in the request for one. The agent further told Ms. Ng that she should receive a letter informing her of her single point of contact in the next week or so. Ms. Ng timely submitted the requested documents to Caliber shortly thereafter. However, Ms. Ng never received a letter informing her of her single point of contact.

36. Also on April 15, 2015, T.D. Service Company purportedly recorded an Assignment of Deed of Trust ("Assignment #2") against the Property. (A true and correct copy of the Assignment #2 [recorded with the San Bernardino County Recorder's Office as Instrument No. 2015-0150230] is attached hereto as **Exhibit F**, and hereinafter incorporated by reference.) Per Assignment #2, BOA purportedly assigned all its beneficial interest in the Deed of Trust to US Bank.

37. On or about April 20, 2015, Ms. Ng contacted Caliber for a modification update. A Caliber agent informed Ms. Ng that her application was under review and that Caliber would contact her if it needed any other information or had an update. Ms. Ng again asked the agent if a single point of contact had been assigned to her file. The Caliber agent informed Ms. Ng that no one was currently assigned to her file but Ms. Ng would receive a letter advising her of

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

her single point of contact in a few weeks. Again, Ms. Ng never received a letter informing her of her single point of contact.

38. On or about May 14, 2015, Ms. Ng contacted Caliber for a modification update and to ask if any other information was needed. A Caliber agent named Sarah informed Ms. Ng that nothing further was required as her application was complete and sent for further review.

39. On June 3, 2015, Defendants recorded another Substitution of Trustee ("Substitution #2") against the Property. (A true and correct copy of the Substitution #2 [recorded with the San Bernardino County Recorder's Office as Instrument No. 2015-0229792] is attached hereto as **Exhibit G**, and hereinafter incorporated by reference.) Per the Substitution #2, Summit was purportedly substituted as the new trustee under the Deed of Trust.

40. Also on June 3, 2015, Summit recorded a Notice of Default against the Property. (A true and correct copy of the Notice of Default [recorded with the San Bernardino County Recorder's Office as Instrument No. 2015-0229793] is attached hereto as **Exhibit H**, and hereinafter incorporated by reference.)

41. In or about early July 2015, Ms. Ng again contacted Caliber for a modification update. Ms. Ng asked to speak to Sarah but she was unavailable. Ms. Ng was connected to a different Caliber agent instead. The Caliber agent informed Ms. Ng that her application had been denied about two weeks ago. Shocked and upset, Ms. Ng told the agent that this was the first time she learned that her application had been denied. Ms. Ng asked the agent why her application had been denied. The agent stated she was not certain, but it appeared that Ms. Ng did not timely provide all the requested documents in time. Ms. Ng explained to the agent that she had always provided all requested information on time, and, moreover, Caliber had never told her that she was missing any documents. The agent apologized for the inconvenience and urged Ms. Ng to reapply for a loan modification quickly because Caliber was set to resume foreclosure proceedings. Ms. Ng again asked if her file had been assigned a single point of contact because she was tired of speaking to different people every time she called and not getting proper updates. The agent said the request was put into their system and that Ms. Ng should receive notice of her single point of contact by next week. Again, Ms. Ng did not

1    receive a letter advising her of her single point of contact.

2    42.   On or about August 4, 2015, Ms. Ng submitted yet another loan modification application,

3          complete with all necessary information, to Caliber, which also informed Caliber of her

4          material change in finances.

5    43.   About week later, in August 2015, Ms. Ng contacted Caliber for a modification update. A

6          Caliber agent informed Ms. Ng that Caliber had received her application, but that a few bank

7          statements were illegible, and kindly requested she resubmit those document. The next day, Ms.

8          Ng submitted the requested documents to Caliber.

9    44.   On or about August 25, 2015, Ms. Ng again contacted Caliber for a modification update. A

10         Caliber agent confirmed that Caliber had received her documents and her application was now

11         complete and sent for further review. Ms. Ng asked the agent to ensure that all foreclosure

12         proceedings ceased pending her loan modification review because the stress from the foreclosure

13         process was seriously affecting her health and the foreclosure notices posted on her door greatly

14         affected her reputation in her tightly-knit community. The Caliber agent informed Ms. Ng that

15         Caliber had the right to continue, and in fact intended to continue, with foreclosure proceedings

16         against the Property, including recording a Notice of Trustee's Sale, until and unless they offered

17         Ms. Ng a loan modification.

18   45.   On September 1, 2015, Summit recorded a Notice of Trustee's Sale against the Property. (A true

19         and correct copy of the Notice of Trustee's Sale [recorded with the San Bernardino County

20         Recorder's Office as Instrument No. 2015-0377129] is attached hereto as **Exhibit I**, and

21         hereinafter incorporated by reference.) However, at no point did Ms. Ng find a copy of the

22         Notice of Trustee's Sale physically posted on her home nor has she received a copy of the Notice

23         of Trustee's Sale by mail. Moreover, the Notice of Trustee's Sale states a foreclosure sale of the

24         Property is currently scheduled for **October 15, 2015**, at 12:00 p.m.

25   ///

26   ///

27   ///

28   ///

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

– 8 –
**VERIFIED COMPLAINT**

1 | HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

## CALIFORNIA HOMEOWNER'S BILL OF RIGHTS

(Effective January 1, 2013)

46. Ms. Ng re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

47. On July 11, 2012, Governor Edmund G. Brown signed into law the Homeowner's Bill of Rights (hereinafter "HBOR") AB 268 (Ch. 86, Stats. 2012) and SB 900 (Ch. 87, Stats. 2012). HBOR became effective on January 1, 2013.

48. HBOR reformed California's non-judicial foreclosure process so that borrowers have greater protection from wrongful foreclosures and a meaningful opportunity to be considered for, and obtain, a loan modification or other alternative to foreclosure.

49. Under HBOR, both California Civil Code §§ 2923 *et seq.* and 2924 *et seq.* have been amended and renewed to provide greater protections to borrowers to prevent unnecessary and improper foreclosures of their homes, borrowers like Ms. Ng.

50. The intent of the HBOR is to ensure that, as part of the non-judicial foreclosure process, borrowers, such as Ms. Ng, are considered for, and have a meaningful opportunity to obtain available loss mitigation options, if any, as an alternative to foreclosure. *See* Civil Code § 2923.4.

51. The HBOR now authorizes borrowers to seek an injunction and damages for material violations of certain provisions, as set forth *infra.* Moreover, if violations of certain HBOR provisions (*e.g.*, Civil Code §§ 2923.55, 2923.6, 2923.7, 2924.10 & 2924.17) are found to be intentional or reckless or results from willful misconduct, the HBOR authorizes the greater of treble actual damages or $50,000.00 in statutory damages. Also, an award for attorney's fees to prevailing borrowers is authorizes under certain provisions. *See* Civil Code § 2924.19.

52. Defendants are residential lenders and/or servicers licensed and regulated by the Department of Corporations under the California Residential Mortgage Lending Act and the California Finance Lenders Law, and are therefore required to comply with recent changes to California foreclosure-prevention laws, effective January 1, 2013, including HBOR.

///

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

## FIRST CAUSE OF ACTION

### Violation of California Civil Code § 2923.55

(Against All Defendants)

53.   Ms. Ng re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

54.   Pursuant to Civil Code §§ 2923.55(a), Defendants may <u>NOT</u> record a notice of default or notice of trustee's sale unless Defendants satisfy the following two requirements:

   a.   Defendants must first <u>contact</u> the borrower to <u>assess</u> the borrower's financial situation **and** explore non-foreclosure options available, or attempt to make such contact with due diligence (*see* Civil Code §§ 2923.55(b)(2)); and

   b.   Where the borrower has submitted a first lien loan modification application that is pending, Defendants must first make a determination either approving or denying the modification application and providing the borrower notification of such a determination in writing, and not until **any appeal period has expired** pursuant to Civil Code § 2923.6(c).

55.   Likewise, pursuant to Civil Code § 2923.55(b)(1)(B), Defendants must send the borrower a statement in writing, informing the borrower that he or she may request the following:

   a.   A copy of the borrower's promissory note or other evidence of indebtedness;

   b.   A copy of the borrower's deed of trust or mortgage;

   c.   A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose; and

   d.   A copy of the borrower's payment history since the borrower was last less than 60 days past due.

### <u>Violation of Civil Code §§ 2923.55(A)</u>

56.   On June 3, 2015, Summit recorded a Notice of Default against the Property. *See* Exhibit H. However, prior to recording the Notice of Default, Defendants failed to contact Ms. Ng at least 30 days prior to recording the Notice of Default in order to assess her financial situation **and** discuss her non-foreclosure options going forward.

57.    Firstly, the *only* foreclosure alternative that Caliber discussed with Ms. Ng was a loan modification, and *only after* Ms. Ng initiated discussions by contacting Caliber for its assistance. Moreover, Caliber, as the loan servicer, never discussed the array of non-foreclosure options that were actually available, such a short sale, deed in lieu of foreclosure, or Chapter 13 bankruptcy. As such, Defendants, at most, were only 20% (1/5th) in compliance with Civil Code § 2923.55, as they failed to discus all five non-foreclosure options with Ms. Ng.

58.    Secondly, Caliber never assessed Ms. Ng's financial situation with due diligence as directed by Civil Code § 2923.55(b) in that Defendants failed to provide Ms. Ng with an honest loan modification determination prior to recording the Notice of Default. This is based on the fact that Ms. Ng had a loan modification application, which was submitted to Caliber in or about March 2015 and confirmed complete on or about May 14, 2015, pending active review when the Notice of Default was recorded (a violation of Civil Code § 2923.6). At the time the Notice of Default was recorded, Defendants had not yet provided Ms. Ng with a written determination of her March 2015 loan modification application.

59.    Notwithstanding Defendants' failure to contact Ms. Ng, Defendants also neglected to comply with the additional requirement set forth under the statute. Ms. Ng maintains that Defendants did not (1) send a first class letter with a toll-free telephone number to find a HUD certified housing counseling agency (as well as information about the lender's contact information), (2) make direct telephonic efforts to contact her at least three times on different hours and on different days, made to the 'primary telephone number on file'; (3) if the telephone call requirements have been met, the lender must then send a certified letter, return receipt requested, including a telephone number; (4) provide a toll-free telephone number for contact purposes that will be answered by a live person during business hours; and (5) have a 'prominent link on the home page of its Internet site' setting forth specified information required for borrowers to pursue discussing options before foreclosure," including contact information both for the lender and for HUD.

///

5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

HAROUNI LAW GROUP

– 11 –
**VERIFIED COMPLAINT**

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

## Violation of Civil Code §§ 2923.55(B)(1)(B)

60. On June 3, 2015, Summit recorded a Notice of Default against the Property. *See* Exhibit H.

61. However, Defendants failed to comply with Civil Code § 2923.55(b)(1)(B) in that Defendants did not send Ms. Ng a statement in writing, informing her that she may request (1) a copy of her promissory note or other evidence of indebtedness; (2) a copy of her deed of trust or mortgage; (3) a copy of any assignment of deed of trust required to demonstrate the right of the mortgage servicer to foreclose; and (4) a copy of her payment history since the loan was last less than 60 days past due. At no point did Ms. Ng receive any correspondence or communication from Defendants informing her that she could request any of the aforementioned documents and information.

* * *

62. As an actual and proximate result of Defendants' complete failure to comply with the contact and assessment requirements and the information requirements of Civil Code § 2923.55, Ms. Ng faces the imminent loss of her home to foreclosure, and subsequent eviction. Ms. Ng was not apprised of her options to avoid foreclosure in advance of Defendants' filing of the Notice of Default, and Defendants' failure to explore options substantially contributed to the fact that foreclosure of her home remains imminent.

63. The fact that Ms. Ng was denied a meaningful opportunity to explore her non-foreclosure options, one of which would have prevented foreclosure and brought her loan current, substantially contributed to the harm that Ms. Ng suffered, which is the loss of her home to wrongful foreclosure.

64. As a direct result of Defendants' failure to comply with Civil Code § 2923.55, Ms. Ng has been injured in that her credit has been severely damaged; her home is subject to imminent foreclosure and her and her son are subject to subsequent eviction; health issues; loss of her reputation; thousands of dollars in Defendants' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper amounts added to Ms. Ng's arrears that keep increasing due to Defendants' misconduct; expending at least $15,000.00 in order to protect her real property rights; and additional amounts, according to proof at the time of trial, all in excess

– 12 –
**VERIFIED COMPLAINT**

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

1    of the jurisdictional minimum of this Court.

2  65.  As a result of Defendants' violation of Civil Code § 2923.55, Ms. Ng is **specifically entitled**

3    **to injunctive relief**, an order enjoining Defendants from foreclosing on the Property, pursuant

4    to Civil Code § 2924.12.

5

6                        **SECOND CAUSE OF ACTION**

7                  **Violation of California Civil Code § 2923.6**

8                        (Against All Defendants)

9  66.  Ms. Ng re-alleges and incorporates by reference all preceding paragraphs as though fully set forth

10    herein.

11 67.  Civil Code § 2923.6 states in pertinent part, "If a borrower submits a complete application

12    for a first lien loan modification offered by, or through, the borrower's mortgage servicer,

13    [the] mortgage servicer [or its agents] *shall not record* **a notice of default** or **notice of sale**,

14    or **conduct a trustee's sale**, while the complete first lien loan modification application is

15    pending…until…[t]he mortgage servicer makes a written determination that the borrower is

16    not eligible for a first lien loan modification, **and any appeal period…has expired**."

17    (Emphasis added).

18 68.  Also, per Civil Code § 2923.6(e), as part of the borrower's "appeal rights," "If the borrower's

19    application for a first lien loan modification is denied, the mortgage servicer…shall not

20    record a **notice of default** or…record a **notice of sale** or **conduct a trustee's sale** until the

21    later of:

22    (1)    Thirty-one days **after the borrower is notified in writing of the denial**…"

23           (Emphasis added.)

24 69.  Further, per Civil Code § 2923.6(f), "following the denial of a first lien loan modification

25    application, the mortgage servicer **shall send a written notice to the borrower identifying**

26    **the reasons for denial**, including the following: The amount of time from the date of the

27    denial letter in which the borrower may request an appeal of the denial of the first lien loan

28    modification and instructions regarding how to appeal the denial." (Emphasis added.)

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

70. Pursuant to Civil Code § 2924.12, "a borrower may bring an action for injunctive relief to enjoin a material violation of Section [.... 2923.6]." In addition, "[a]ny injunction shall remain in place [...] until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief."

### First Violation

71. In or about March 2015, Ms. Ng submitted a loan modification application to Caliber for review. On or about May 14, 2015, Caliber confirmed Ms. Ng's application was complete and sent for further review.

72. However, on June 3, 2015, Summit recorded a Notice of Default against the Property, despite Ms. Ng's March 2015 loan modification application pending review. *See* Exhibit H. As a result, Defendants are in violation Civil Code § 2923.6(c).

### Second Violation

73. On or about August 4, 2015, Ms. Ng submitted a loan modification application to Caliber for review, which also informed Caliber of her material change in finances. On or about August 25, 2015, Caliber confirmed Ms. Ng's application was complete.

74. However, on September 1, 2015, Summit recorded a Notice of Trustee's Sale against the Property, despite Ms. Ng's August 2015 loan modification application pending review. *See* Exhibit I. As a result, Defendants are in violation Civil Code § 2923.6(c).

### Third Violation

75. On or about August 4, 2015, Ms. Ng submitted a loan modification application to Caliber for review, which also informed Caliber of her material change in finances. On or about August 25, 2015, Caliber confirmed Ms. Ng's application was complete.

/ / /

/ / /

**VERIFIED COMPLAINT**

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

76. Also, on or about August 25, 2015, however, Caliber informed Ms. Ng that Caliber had the right to continue, and in fact intended to continue, with foreclosure proceedings against the Property. Currently, a trustee's sale of the Property is scheduled for October 15, 2015, at 12:00 p.m.

77. To date, Caliber has not provided Ms. Ng a determination of her complete August 2015 loan modification application. Still, Defendants intend to proceed with the October 15, 2015 foreclosure sale of the Property. Therefore, Defendants' intentions to proceed with the October 15, 2015 trustee's sale of the Property is in violation of Civil Code § 2923.6.

\*\*\*

78. As an actual and proximate result of Defendants' complete failure to abide by Civil Code § 2923.6, Ms. Ng stands to lose title to her home by Defendants' wrongful foreclosure of the Property. But for Defendants' failure to comply with the tenets of Civil Code § 2923.6, Defendants would not have the authority to proceed with a foreclosure of the Property.

79. To date, Ms. Ng has been diligent in contacting Defendants in attempts to resolve the situation, including applying and timely sending in her loan modification application documents, and calling Defendants on numerous occasions to get updates and guidance on her loan modification. At all times, Defendants were and are keenly aware of Ms. Ng's loan modification and general account status.

80. Due to Defendants' failure to comply with Civil Code § 2923.6, Ms. Ng has been injured in that her credit has been severely damaged; her home is subject to imminent foreclosure and her and her son are subject to subsequent eviction; health issues; loss of her reputation; thousands of dollars in Defendants' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper amounts added to Ms. Ng's arrears that keep increasing due to Defendants' misconduct; expending at least $15,000.00 in order to protect her real property rights; and additional amounts, according to proof at the time of trial, all in excess of the jurisdictional minimum of this Court..

81. In addition, as a result of Defendants' violation of Civil Code § 2923.6, Ms. Ng is **specifically entitled to injunctive relief**, an order enjoining Defendants from foreclosing on the Property, pursuant to Civil Code § 2924.12.

1

**THIRD CAUSE OF ACTION**

2

**Violation of California Civil Code § 2923.7**

3

(Against All US Bank and Caliber)

4  82.  Ms. Ng re-alleges and incorporates by reference all preceding paragraphs as though fully set forth

5       herein.

6  83.  Here, Defendants violated Civil Code §§ 2923.7(b)(1), 2923.7(b)(2), 2923.7(b)(3), 2923.7(b)(4),

7       and 2923.7(b)(5).

8  84.  **POLICY:** Civil Code § 2923.7 was enacted by the California legislature specifically to head off

9       the disarray in lenders' and servicers' loss mitigation departments, *which caused inconsistencies*

10      *and significant delays within the loan modification process.* Agents in loss mitigation

11      departments did not know what other agents were doing, advising, or promising borrowers. One

12      department did not know what the other department was doing. Their agents would ask

13      borrowers to supplement a loan modification application with the same documents over and over

14      again, such as a tax return from the prior year, though the borrower had already submitted the

15      document on multiple occasions and though nothing in that document was subject to change. In

16      order to bring a modicum of *consistency, authority, and accountability* within the loan

17      modification process, the Homeowner's Bill of Rights, which was enacted in 2013, required,

18      pursuant to Civil Code § 2923.7, that there be a "single point of contact" assigned to every loan

19      modification application to assist the borrower in navigating Defendants' procedures to avoid

20      foreclosure. The single point of contact must remain assigned to the borrower until all loss

21      mitigation options are exhausted or the borrower's account is current.

22  85.  In order to accommodate lenders who found it overly burdensome to assign a single person to

23      act as a "single point of contact", the legislature extended the definition of a single point of

24      contact to include a "team of personnel". However, in keeping with the policy behind § 2923.7,

25      the legislature required that every member of this "team" be currently knowledgeable about the

26      status of the application, offer information about the application to the borrower which they may

27      or may not know (i.e. which documents are missing, the borrowers' foreclosure alternatives),

28      and have the authority to immediately stop a sale if proceeding with it would be unlawful,

– 16 –

amongst other things. (*See* 2923.7(b)(1-5)).

86. In this action, BOA purportedly assigned Nick or Mr. Macier as Ms. Ng's purported single point of contact. However, Defendants *did not assign a single point of contact* to Ms. Ng, as, over the next eight months, Ms. Ng was forced to run the gauntlets of customer service representatives, and was never able to reach Nick or Mr. Macier ever again. Additionally, Ms. Ng made three separate requests for a single point of contact to Caliber. However, Caliber completely failed to assign Ms. Ng a single point of contact at any time. Instead, Ms. Ng has been forced to speak with dozens of other customer service representatives during the past two years.

87. Caliber, as the loan servicer on behalf of US Bank, failed to provide Ms. Ng with a single point of contact who was consistent, knowledgeable and authoritative to assist throughout the loan modification process.

88. Pursuant to Civil Code § 2923.7(a) & (c), Defendants have a duty to promptly provide a defaulting borrower or borrower likely to default with a single point of contact to assist the borrower in navigating Defendants' procedures to avoid foreclosure. The single point of contact must remain assigned to the borrower until all loss mitigation options are exhausted or the borrower's account is current.

89. Furthermore, pursuant to Civil Code § 2923.7(b), the single point of contact must have the ability and authority to perform the following responsibilities:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

– 17 –
**VERIFIED COMPLAINT**

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary."

90.   Also, pursuant to Civil Code § 2923.7(e), if the single point of contact is a "team of personnel", each team member must have the ability and authority to perform the following responsibilities pursuant to Civil Code §§ 2923.7(b) and (d).

91.   In or about early February 2014, Ms. Ng submitted a loan modification application to BOA, as agent for US Bank and predecessor servicer to Caliber, and also requested a single point of contact. BOA informed Ms. Ng that a single point of contact was not assigned to her file, but that she could call BOA agent, Nick, and speak to him going forward. On or about May 9, 2014, Ms. Ng received a letter from BOA informing her that her single point of contact was Craig Macier. *See* Exhibit D.

92.   Over the next eight months, however, Ms. Ng frequently contacted BOA for modification updates. Each time, Ms. Ng requested to speak to Nick or Mr. Macier, but they were always unavailable. Instead, Ms. Ng was always connected to different BOA agents who was unfamiliar with her file and financial circumstances. The BOA agents repeatedly requested she submit and re-submit duplicative documents and information that had been misplaced or expired. In April 2014, Ms. Ng was even instructed to submit an entirely new application.

93.   In or about December 2014, Ms. Ng contacted Caliber for modification updates. However, Caliber agents were unable to advise Ms. Ng on her modification because her file was not yet in their system, despite the servicing transfer occurring on or about November 16, 2014.

94.   Moreover, on three separate occasions, in or about March 2015, April 20, 2015, and early July 2015, Ms. Ng asked Caliber to assign her a single point of contact to assist her with the modification process because she was tired of speaking to different people (including Sherrie and Sarah) who were unfamiliar with her file, unable to explain the modification process, without authority to postpone foreclosure proceedings. During these communications, Caliber informed Ms. Ng that a single point of contact has not been assigned to her file, but

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

1    that one would be assigned in the next week or so. Moreover, Ms. Ng would receive a letter

2    from Caliber advising her of her single point of contact. However, Ms. Ng never received a

3    letter advising of such.

4    95.   Further, the representatives with whom Ms. Ng spoke with failed to act as a *single point of*

5    *contact* either individually or as a *team of personnel*, due to the following:

6          a.   Defendants violated Civil Code § 2923.7(b)(1): Defendants did not communicate the

7               process by which a borrower may apply for an available foreclosure prevention

8               alternative and the deadlines for any required submissions to be considered for these

9               options, **as a single point of contact or members of a team of personnel are required**

10              **to do under Civil Code § 2923.7(b)(1)**. Defendants did not communicate any processes

11              of any foreclosure alternative. Instead, Defendants simply instructed Ms. Ng to submit

12              updated information and documents every few weeks, and at times completely new

13              application packages, without mention of any deadlines, other foreclosure prevention

14              alternatives, or foreclosure prevention alternatives' processes.

15         b.   Defendants violated Civil Code § 2923.7(b)(2): Defendants did not (1) coordinate the

16              receipt of all Ms. Ng's documents associated with her loan modification applications, nor

17              (2) notify Ms. Ng of any missing documents necessary to complete the application the

18              process, **as required under Civil Code § 2923.7(b)(2)**. Defendants' non-coordination is

19              evinced by Defendants' repeated request for duplicative documentation, the loss of her

20              application during the servicing change, general loss of her documents. Also,

21              Defendants, on numerous occasions informed Ms. Ng that updated and/or missing

22              documents were needed to complete their review of Ms. Ng's loan modification

23              applications but failing to detail, with any specificity, which documents were needed

24              to complete the review process.

25    ///

26    ///

27    ///

28    ///

– 19 –
**VERIFIED COMPLAINT**

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

c.      <u>Defendants violated Civil Code § 2923.7(b)(3)</u>: Defendants did not have access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative **as required under Civil Code § 2923.7(b)(3)**. Defendants' access to current information and personnel was gravely insufficient and evinced by the following: First, it was *Ms. Ng who initiated the contact* with Defendants hundred percent certain to receive any kind of loan modification or foreclosure alternative update. Second, on at least two different occasions Defendants' agents were unable to provide Ms. Ng accurate updates concerning modification applications: (1) Caliber lost her October 2014 application during the servicing change; and (2) Caliber agents were unable to explain the denial of her March 2015 application. Third, in August 2015, despite the fact that Ms. Ng's complete modification application was under review, Caliber incorrectly informed Ms. Ng that it was Defendants' right to continue with foreclosure until and unless they offered Ms. Ng a loan modification. Lastly, over the course of the loan modification review process, Ms. Ng was repeatedly instructed to submit duplicative and recently-provided information and entire applications.

d.      <u>Defendants violated Civil Code § 2923.7(b)(4)</u>: Defendants did not ensure that Ms. Ng was considered for all foreclosure prevention alternatives they offered borrowers **as required under Civil Code § 2923.7(b)(4)**. Over the course the last two year, Defendants only considered Ms. Ng for a loan modification, as Defendants' agents instructed and urged Ms. Ng to submit application after application to BOA and Caliber. Furthermore, Defendants failed to consider Ms. Ng for other non-foreclosure options, and even dissuaded Ms. Ng from seeking other non-foreclosure options.

e.      <u>Defendants violated Civil Code § 2923.7(b)(5)</u>: Defendants did not have access to individuals with the ability and authority to stop foreclosure proceedings when necessary **as required under Civil Code § 2923.7(b)(5)**. If they had, Ms. Ng's single point of contact, as an individual or a team, would have prevented: (1) Defendants from recording the Notice of Default on June 3, 2015 while Ms. Ng's March 2015 loan

– 20 –
**VERIFIED COMPLAINT**

modification application was actively pending; (2) Defendants from recording the Notice of Trustee's Sale on September 1, 2015 while Ms. Ng's August 2015 loan modification application was actively pending as required by Civil Code § 2923.6; (3) Defendants from informing Ms. Ng that they intend to proceed with foreclosure of the Property despite not having first provided her a written determination of her August 2015 loan modification application; and (4) Defendants from proceeding with the scheduled foreclosure sale set for **October 15, 2015, at 12:00 p.m.**

96.  Because Defendants' agents, either as an individual or otherwise, failed to comply with each and every requirement imposed by Civil Code § 2923.7(b), Defendants violated Civil Code § 2923.7 by failing to provide Ms. Ng a single point of contact.

97.  Defendants' violation of Civil Code § 2923.7 was prejudicial to Ms. Ng because it deprived her of a meaningful opportunity to prevent foreclosure and become current on her loan. Each time Ms. Ng spoke with a different agent, she was provided with deficient information that prevented her from reasonably assessing her situation and avoid foreclosure at pivotal times when such information would have made a difference.

98.  As an actual and proximate result of Defendants' complete failure to abide by Civil Code § 2923.7, Ms. Ng now faces unlawful foreclosure proceedings initiated against her home, as well as the imminent loss of title and possession of her home.

99.  Had Defendants complied with the requirements and tenets of Civil Code § 2923.7, Ms. Ng would have been aware of the measures that would have prevented the foreclosure she is now threatened with and become current on her loan.

100.  Due to Defendants' failure to comply with California Civil Code § 2923.7, Ms. Ng has been injured in that her credit has been severely damaged; her home is subject to imminent foreclosure and her and her son are subject to subsequent eviction; health issues; loss of her reputation; thousands of dollars in Defendants' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper amounts added to Ms. Ng's arrears that keep increasing due to Defendants' misconduct; expending at least $15,000.00 in order to protect her real property rights; and additional amounts, according to proof at the time of trial, all in excess

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

– 21 –
**VERIFIED COMPLAINT**

1　of the jurisdictional minimum of this Court.

2　101.　As a result of Defendants' violation of Civil Code § 2923.7, Ms. Ng is **specifically entitled to**

3　　　**injunctive relief**, an order enjoining Defendants from foreclosing on the Property, pursuant to

4　　　Civil Code § 2924.12.

5

6　　　**FOURTH CAUSE OF ACTION**

7　　　**Violation of California Civil Code § 2924.10**

8　　　(Against All US Bank and Caliber)

9　102.　Ms. Ng re-alleges and incorporates by reference all preceding paragraphs as though fully set forth

10　　herein.

11　103.　Civil Code § 2924.10 provides the procedures and guidelines that a lender/servicer must

12　　follow in reviewing a borrower for foreclosure prevention alternatives.

13　104.　Civil Code § 2924.10 states, in pertinent, that:

14　　"(a)　When a borrower submits a complete first lien modification application or any

15　　　　document in connection with a first lien modification application, the mortgage

16　　　　servicer *shall provide written acknowledgment of the receipt of the documentation*

17　　　　*within five business days of receipt*. In its initial acknowledgment of receipt of the

18　　　　loan modification application, the mortgage servicer *shall include* the following

19　　　　information:

20　　　　1.　A description of the loan modification process, including an estimate of when

21　　　　　a decision on the loan modification will be made after a complete application

22　　　　　has been submitted by the borrower and the length of time the borrower will

23　　　　　have to consider an offer of a loan modification or other foreclosure

24　　　　　prevention alternative.

25　　　　2.　Any deadlines, including deadlines to submit missing documentation, that

26　　　　　would affect the processing of a first lien loan modification application.

27　　　　3.　Any expiration dates for submitted documents.

28　/ / /

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

– 22 –
**VERIFIED COMPLAINT**

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

4.      Any deficiency in the borrower's first lien loan modification application."
(Emphasis added).

### February 2014 Loan Modification Application

105.    In or about February 2014, Ms. Ng submitted a complete loan modification application to BOA, as agent for US Bank and predecessor servicer to Caliber, for review.

106.    Over the next six months, Ms. Ng regularly contacted BOA for modification application updates. Although BOA agents confirmed that Ms. Ng's application was still under review, they repeatedly requested she submit and re-submit duplicative documents and information because said information was misplaced or expired. Ms. Ng timely complied with each and every request.

107.    However, at no time after receiving any part of Ms. Ng's February 2014 loan modification application and subsequent documentation, let alone within five days upon receipt, did Defendants provide Ms. Ng acknowledgment of receipt of her application and associated documents, nor did Defendants advise Ms. Ng of the description of the loan modification processes, deadlines, expiration dates, or any deficiencies of her loan modification application.

### October 2014 Loan Modification Application

108.    In or about mid-October 2014, Ms. Ng submitted a complete loan modification application to BOA, as agent for US Bank and predecessor servicer to Caliber, for review.

109.    Over the next month, Ms. Ng contacted BOA for modification application updates. Although a BOA agent confirmed it had received Ms. Ng's application, and further requested she submit additional information to BOA to complete her application. Ms. Ng immediately submitted the requested documents, and BOA thereafter confirmed her application was complete a few days later when she called BOA.

/ / /

/ / /

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

110.    However, at no time after receiving any part of Ms. Ng's October 2014 loan modification application and subsequent documentation, let alone within five days upon receipt, did Defendants provide Ms. Ng acknowledgment of receipt of her application and associated documents, nor did Defendants advise Ms. Ng of the description of the loan modification processes, deadlines, expiration dates, or any deficiencies of her loan modification application.

## March 2015 Loan Modification Application

111.    In or about March 2015, Ms. Ng submitted a complete loan modification application to Caliber, as agent for US Bank, for review.

112.    Over the next four months, Ms. Ng regularly contacted Caliber for a modification updates. Although Caliber agents confirmed Ms. Ng's application was under review, they repeatedly requested she submit and re-submit duplicative documents and information because said information. Ms. Ng timely complied with each and every request.

113.    However, at no time after receiving any part of Ms. Ng's March 2015 loan modification application and subsequent documentation, let alone within five days upon receipt, did Defendants provide Ms. Ng acknowledgment of receipt of her application and associated documents, nor did Defendants advise Ms. Ng of the description of the loan modification processes, deadlines, expiration dates, or any deficiencies of her loan modification application.

## August 2015 Loan Modification Application

114.    On or about August 4, 2015, Ms. Ng submitted another complete loan modification application to Caliber, as agent for US Bank, for review.

115.    Over the next month, Ms. Ng contacted Caliber for a modification update. A Caliber agent confirmed Caliber received her application, but that a few documents needed to be resubmitted due to legibility issues. Ms. Ng submitted the requested documents to Caliber the next day.

///

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

116.   However, at no time after receiving any part of Ms. Ng's August 2015 loan modification application and subsequent documentation, let alone within five days upon receipt, did Defendants provide Ms. Ng acknowledgment of receipt of her application and associated documents, nor did Defendants advise Ms. Ng of the description of the loan modification processes, deadlines, expiration dates, or any deficiencies of her loan modification application.

*** 

117.   Defendants' failure to comply with Civil Code § 2924.10 was material because Ms. Ng was rendered ignorant of the loan modification process, as the only information regarding the loan modification process came from Defendants' various agents, who, as detailed *supra*, provided Ms. Ng with inaccurate, incomplete, or contradictory information about (1) the loan modification review process; (2) deadlines to submit missing documents; (3) expiration of submitted documents; and (4) deficiencies in Ms. Ng's submitted loan modification applications. As a result, Ms. Ng was injured by Defendants' failure to comply with Civil Code § 2924.10, as Ms. Ng's loan modification review was delayed due to (1) Defendants' failure to acknowledge which documents they had received; (2) Defendants' failure to acknowledge which documents Ms. Ng needed to send in order move along the review process; and (3) required Ms. Ng to re-submit duplicate documentation and whole applications.

118.   As an actual and proximate result of Defendants' failure to abide by Civil Code § 2924.10, Ms. Ng now faces the imminent foreclosure of the Property and she to subsequent eviction.

119.   Due to Defendants' failure to comply with Civil Code § 2924.10, Ms. Ng has been injured in that her credit has been severely damaged; her home is subject to imminent foreclosure and her and her son are subject to subsequent eviction; health issues; loss of her reputation; thousands of dollars in Defendants' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper amounts added to Ms. Ng's arrears that keep increasing due to Defendants' misconduct; expending at least $15,000.00 in order to protect her real property rights; and additional amounts, according to proof at the time of trial, all in excess of the

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

1     jurisdictional minimum of this Court.

2    120.   In addition, as a result of Defendants' violation of Civil Code § 2924.10, Ms. Ng is

3     **specifically entitled to injunctive relief**, an order enjoining Defendants from foreclosing on

4     the Property, pursuant to Civil Code § 2924.12.

5

6                     **FIFTH CAUSE OF ACTION**

7          **Violation of California Civil Code § 2924.17**

8               (Against All Defendants)

9    121.   Ms. Ng re-alleges and incorporates by reference all preceding paragraphs as though fully set forth

10     herein.

11   122.   California Civil Code § 2924.17 provides specific declaration requirements a servicer must meet

12     in order to proceed with foreclosure of a borrower's home.

13   123.   Civil Code § 2924.17(a) states that, "a notice of default, notice of sale, assignment of a deed of

14     trust...recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject

15     to the requirements of Section 2924...**shall be accurate and complete and supported by**

16     **competent and reliable evidence**." (Emphasis added).

17   124.   Civil Code § 2924.17(b) further states, "[b]efore recording or filing any of the documents

18     described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and

19     reliable evidence to substantiate the borrower's default and the right to foreclose, including the

20     borrower's loan status and loan information.

21   125.   On June 3, 2015, Summit recorded a Notice of Default against the Property. Property. *See*

22     Exhibit H.

23   126.   On September 1, 2015, Summit recorded a Notice of Trustee's Sale against the Property. *See*

24     Exhibit I.

25   ///

26   ///

27   ///

28   ///

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

127. However, as alleged herein, Defendants violated Civil Code 2924.17 as follows: (1) Defendants failed to contact Ms. Ng to assess her financial situation **and** explore her non-foreclosure alternatives, or inform Ms. Ng that she may request various documents from Defendants (a violation of Civil Code § 2923.55); (2) Defendants recorded the Notice of Default while Ms. Ng's March 2015 loan modification application was pending review (a violation of Civil Code § 2923.6); (3) Defendants recorded the Notice of Trustee's Sale while Ms. Ng's August 2015 loan modification application was pending review (a violation of Civil Code § 2923.6); (4) Defendants intend on proceeding with the October 15, 2015 trustee's sale of the Property despite Ms. Ng's August 2015 loan modification application currently pending review (a violation of Civil Code § 2923.6); (5) Defendants failed to assign Ms. Ng a single point of contact that is responsible for communicating the foreclosure processes, coordinating receipt of documents, having access to current information and sufficient personnel, ensuring all foreclosure prevention alternatives offered are considered, as well as having access to individuals with the ability and authority to stop foreclosure proceedings (a violation of Civil Code § 2923.7); (6) Defendants failed to physically post a copy of the Notice of Trustee's Sale on the Property or mail Ms. Ng a copy (a violation of Civil Code § 2924f); (7) Defendants failed to timely acknowledge receipt of Ms. Ng's February 2014, October 2014, March 2015, and August 2015 loan modification applications and supplemental documentation, and timely inform Ms. Ng of the processes, expiration dates, deadlines, and deficiencies associated with her loan modification applications (a violation of Civil Code § 2924.10).

128. Given these aforementioned statutory failures and misconduct, it is impossible that Defendants could "ensure that [they have] reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose" to support the Notice of Default and the Notice of Trustee's Sale, pursuant to Civil Code § 2924.17(b).

129. As an actual and proximate result of Defendants' violation of California Civil Code § 2924.17, Ms. Ng now faces imminent foreclosure of her home and she subject to subsequent eviction.

///

///

130. Moreover, as a result of Defendants' failure to comply with Civil Code § 2923.17, Defendants were allowed to proceed with the foreclosure process (i.e, record the Notice of Default and Notice of Trustee's Sale).

131. Due to Defendants' failure to comply with California Civil Code § 2924.17, Ms. Ng has been injured in that her credit has been severely damaged; her home is subject to imminent foreclosure and her and her son are subject to subsequent eviction; health issues; loss of her reputation; thousands of dollars in Defendants' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper amounts added to Ms. Ng's arrears that keep increasing due to Defendants' misconduct; expending at least $15,000.00 in order to protect her real property rights; and additional amounts, according to proof at the time of trial, all in excess of the jurisdictional minimum of this Court.

132. As a result of Defendants' violation of Civil Code § 2924.17, Ms. Ng is **specifically entitled to injunctive relief**, an order enjoining Defendants from foreclosing on the Property, pursuant to Civil Code § 2924.12.

## SIXTH CAUSE OF ACTION

### Violation of Civil Code § 2924f

(Against All Defendants)

133. Ms. Ng re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

134. Civil Code § 2924f requires that, "before any sale of property can be made under the power of sale contained in any deed of trust or mortgage, ...notice of the sale thereof shall be given by posting a written notice of the time of sale and of the street address and the specific place at the street address where the sale will be held[.] A copy of the notice of sale shall also be posted in a conspicuous place on the property to be sold at least 20 days before the date of sale, where possible and where not restricted for any reason. If the property is a single-family residence the posting shall be on a door of the residence, but, if not possible or restricted, then the notice shall be posted in a conspicuous place on the property[.]"

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

135. On September 1, 2015, Summit, on behalf of US Bank and Caliber, recorded a Notice of Trustee's Sale against the Property. *See* Exhibit I.

136. However, Defendants failed to physically post the Notice of Trustee's Sale on Ms. Ng's home. Moreover, neither Caliber nor Summit mailed the Notice of Trustee's Sale to Ms. Ng. As such, Ms. Ng was not given adequate notice of the scheduled October 15, 2015 foreclosure sale.

137. Defendants' violation of Civil Code § 2924f is a substantial factor, and the actual and proximate cause of Ms. Ng's damages because, but for Defendants' breach, Ms. Ng could have pursued other options to reinstate the loan and bring it current such as filing Chapter 13 bankruptcy or paying her entire arrears at once.

138. As a direct result of Defendants' failure to comply with Civil Code § 2924f, Ms. Ng has been injured in that her credit has been severely damaged; her home is subject to imminent foreclosure and her and her son are subject to subsequent eviction; health issues; loss of her reputation; thousands of dollars in Defendants' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper amounts added to Ms. Ng's arrears that keep increasing due to Defendants' misconduct; expending at least $15,000.00 in order to protect her real property rights; and additional amounts, according to proof at the time of trial, all in excess of the jurisdictional minimum of this Court.

## SEVENTH CAUSE OF ACTION
### Negligence & Negligence *Per Se*
(Against All Defendants)

139. Ms. Ng re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

///
///
///
///
///

## DEFENDANTS OWED A DUTY OF CARE TO MS. NG BECAUSE THEY EXCEEDED
## THEIR ROLE AS A TRADITIONAL MONEY LENDER.

140.    The test to determine whether a financial institution owes a duty of care to a borrower involves the balancing of six *Biakanja* factors: (1) the extent to which the transaction was intended to affect the plaintiff; (2) the foreseeability of harm to the plaintiff; (3) the degree of certainty that the plaintiff suffered injury; (4) the closeness of the connection between the defendant's conduct and the injury suffered; (5) the moral blame attached to the defendant's conduct; and (6) the policy of preventing future harm. *See Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal.App.3d 1089, 1098 (1991); *see also Biakanja v. Iving*, 49 Cal.2d 647, 650 (1958).

141.    In analyzing the first *Biakanja* factor, whether or not the transaction was intended to affect the plaintiff, courts have held that defendant's conduct is found to affect the plaintiff if the defendant commits the conduct with knowledge of plaintiff's circumstances. *See e.g., Jolley v. Chase Financial, LLC* (2013) 213 Cal.App.4th 872, 900.

   a.    In or about late 2013, Ms. Ng contacted Defendants to explore home loan assistance options because she was experiencing financial troubles. Unfortunately, Defendants did not have any options available because she was current on her home loan.

   b.    In or about early 2014, upon defaulting on her home loan, she again contacted Defendants for home loan assistance. Defendants immediately instructed Ms. Ng to submit a loan modification application. Ms. Ng timely complied.

   c.    Over the next two years, Ms. Ng repeatedly submitted to Defendants, duplicative documents and information, including whole entire modification applications in or about February 2014, October 2014, March 2015, and August 2015.

142.    As a result, there is no question that Defendants were informed of Ms. Ng's financial circumstances at all times, and, therefore, their conduct, detailed *supra*, was specifically intended to affect Ms. Ng.

///

///

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

– 30 –
**VERIFIED COMPLAINT**

143. In analyzing the second *Biakanja* factor, the foreseeability of harm to plaintiff, Ms. Ng's harm caused by Defendants' conduct was foreseeable, as Defendants should have foreseen such harm due to their (1) knowledge and expertise in the financial industry, and (2) complete control over Ms. Ng's loan and loan modification review process. *See e.g., Laabs v. Southern California Edison Company* (2009) 175 Cal.App.4th 1260, 1269 (foreseeability is a triable issue of fact). Further, it only requires common sense to determine that: (1) if a lender decides to foreclose on a borrower's home without first providing the borrower a written determination of the borrower's loan modification application, or advise her of her appeal rights, the ensuing foreclosure will ultimately harm the borrower; and (2) that a borrower's credit will be harmed and the borrower will owe more in arrears the longer a lender trifles with the loan modification process. Thus, foreseeability of harm is clear.

144. In analyzing the third *Biakanja* factor, the degree of certainty that the plaintiff suffered injury, it is clear that Ms. Ng has certainly suffered injury, as (1) Ms. Ng's interest in her Property is in jeopardy, as Defendants have unlawfully initiated the foreclosure process by recording the Notice of Default and Notice of Trustee's Sale, and they now intend to foreclose on the Property on October 15, 2015; (2) Ms. Ng is subject to subsequent eviction; (3) Ms. Ng has been denied the opportunity to modify her loan, as each application Ms. Ng submitted to Defendants have been reviewed in bad faith, as Defendants have lost and misplaced documentation; required Ms. Ng to re-submit duplicate documentation, including whole applications; and failed to render timely determinations of her loan modification applications; (4) Ms. Ng's credit was, and continues to be, severely damaged; (5) Ms. Ng has suffered health issues related to Defendants' negligent misconduct; (6) Ms. Ng has suffered loss of her reputation in the community; (7) Ms. Ng has spent thousands of dollars in Defendants' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper amounts were added to her arrears; and (8) Ms. Ng has expended at least $15,000.00 in order to protect her real property rights, and additional amounts, according to proof at the time of trial, all in excess of the jurisdictional minimum of this Court.

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

145.   In analyzing the fourth *Biakanja* factor, the closeness of the connection between the defendant's conduct and the injury suffered, Defendants' conduct was firmly and intimately tied to Ms. Ng harm as follows:

   a.   But for Defendants' refusal to adequately inform Ms. Ng of her financial options and/or the non-foreclosure alternatives available to her, Ms. Ng would likely be current on her loan, as she would have been aware of all of the non-foreclosure alternatives available to her.

   b.   But for Defendants' failure to comply with Civil Code §§ 2923.55, 2923.6, 2923.7, 2924f, 2924.10, and 2924.17, Ms. Ng's home would not be subject to foreclosure, as Defendants would not have been able to initiate the foreclosure process without complying with these statutes.

146.   In analyzing the fifth *Biakanja* factor, the moral blameworthiness of Defendants' conduct, Defendants' conduct was morally reprehensible as they acted without any regard for distressed homeowners, including Ms. Ng, who tried desperately to save the Property from foreclosure during a national recession which Defendants largely produced. Defendants caused Ms. Ng to submit four complete loan modification applications to Defendants for review, a process that was significantly delayed, as Defendants (1) mishandled and lost Ms. Ng's documentation, and whole applications; (2) required Ms. Ng to repeatedly submit duplicative documentation and information; and (3) subjected Ms. Ng to "dual tracking", illegal conduct that reinforces the view that Defendants' conduct was blameworthy. *See Ansanelli v. JP Morgan Chase Bank, N.A.*, No. 10-cv-03892-WHA, 2011 WL 1134451, at *1.

147.   In analyzing the sixth *Biakanja* factor, the policy of preventing future harms, it is undisputedly clear that public policy encourages **lenders and borrowers to work together to prevent a borrower from defaulting on their loan**. *See Jolly*, 213 Cal.App.4[th] at 903 (the ongoing financial crises has caused the federal government to adopt programs that encourage lenders and borrowers to work together to prevent a borrower from defaulting on their loan); *see also e.g.,* U.S. Dept. Treasury, Supplemental Directive No. 09-01 (April 6,

– 32 –
**VERIFIED COMPLAINT**

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

1  2009); Civil Code §§ 2923.5-2924.10. Here, any assistance Defendants offered to Ms. Ng
2  was done in bad faith and without any controls or supervision to ensure that Ms. Ng would
3  not be left worse off as a result of the loan modification application process.

4  148.  Based on the foregoing, it is exceedingly clear that the *Biakanja* factors favor imposing a
5  duty of care on Defendants, as their actions and conduct have gone beyond the role of a
6  mere money lender. *See e.g., Alvarez v. BAC Home Loans Servicing, L.P.*
7  (2014) 228 Cal.App.4th 941, 951 (the California Court of Appeals upheld a borrower's
8  negligence claim against her loan servicer, holding a servicer has a reasonable duty of care in
9  processing a loan modification application and complying with provisions of HBOR).

10  149.  In addition, pursuant to the doctrine negligence per se, Defendants owe a duty to <u>comply
11  with the laws</u>, and Defendants are liable where Defendants violate the very laws intended to
12  protect Ms. Ng from unwarranted foreclosure and said violations caused the injuries
13  suffered by Ms. Ng.

14  150.  Defendants violated numerous statutes that serve as the underlying violations for liability under
15  the doctrine of negligence per se:

16  a.  Violating Civil Code § 2923.55;
17  b.  Violating Civil Code § 2923.6;
18  c.  Violating Civil Code § 2923.7;
19  d.  Violating Civil Code § 2924f;
20  e.  Violating Civil Code § 2924.10; and
21  f.  Violating Civil Code § 2924.17.

22  151.  Civil Code §§ 2923.55, 2923.6, 2923.7, 2924f, 2924.10, and 2924.17, were enacted by the
23  California legislature specifically to protect the rights of innocent homeowners suffering from
24  financial hardships. These statutes were also enacted by the California legislature specifically to
25  prevent the same injury that Ms. Ng will imminently suffer: <u>wrongful foreclosure, and eviction
26  resulting from a wrongful, unlawful, and improper foreclosure.</u>

27  ///
28  ///

– 33 –
**VERIFIED COMPLAINT**

1

## DEFENDANTS' BREACHED THEIR DUTY OF CARE OWED TO MS. NG

2   152.   Defendants breached their duty of due care owed to Ms. Ng by partaking in the following

3   unreasonable conduct that caused injury to Ms. Ng:

4   a.   Civil Code § 2923.55(a): Defendants negligently failed to contact Ms. Ng in order to

5   assess her financial situation **and** explore foreclosure alternatives at least 30 days

6   before recording the Notice of Default. Also, Defendants negligently failed to provide

7   Ms. Ng with a determination of her March 2015 loan modification application, or

8   advise her of her appeal rights, prior to recording the Notice of Default against the

9   Property.

10   b.   Civil Code § 2923.55(b)(1)(B): Prior to recording the Notice of Default, Defendants

11   negligently failed to inform Ms. Ng, in writing, that she may request (1) a copy of her

12   promissory note or other evidence of indebtedness; (2) a copy of her deed of trust or

13   mortgage; (3) a copy of any assignment of deed of trust required to demonstrate the

14   right of the mortgage servicer to foreclose; and (4) a copy of her payment history since

15   Ms. Ng was last less than 60 days past due.

16   c.   Civil Code § 2923.6: Defendants negligently (1) recorded a Notice of Default on June

17   3, 2015, despite the fact that Ms. Ng's complete March 2015 loan modification

18   application was pending review; (2) recorded a Notice of Trustee's Sale on September

19   1, 2015, despite the fact that Ms. Ng's complete August 2015 loan modification

20   application was pending review; (3) recorded a Notice of Default on June 3, 2015

21   without first providing Ms. Ng a written determination of her March 2015 loan

22   modification application, or advising her of her appeal rights in writing; (4) recorded a

23   Notice of Trustee's Sale on September 1, 2015 without first providing Ms. Ng a written

24   determination of her August 2015 loan modification application, or advised her of her

25   appeal rights in writing; and (5) scheduled foreclosure sale, set for October 15, 2015

26   (*see* **Exhibit I**) despite the fact that Ms. Ng's August 2015 loan modification is still

27   pending review.

28   ///

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

d.  Civil Code § 2923.7: Defendants negligently failed to provide Ms. Ng with a single point of contact who is familiar with her file and circumstances, as required under Civil Code § 2923.7, because Defendants failed to (1) communicate available foreclosure prevention alternative, their processes; and deadlines; (2) coordinate the receipt of all Ms. Ng's documents associated with the loan modification application process and notify Ms. Ng of any missing documents necessary to complete the process; (3) have access to current information and personnel sufficient to timely, accurately, and adequately inform Ms. Ng of the current status of the foreclosure prevention alternative; (4) ensure that Ms. Ng was considered for all foreclosure prevention alternatives offered by Defendants; and (5) have access to individuals with the ability and authority to stop foreclosure proceedings, and, instead, required Ms. Ng to communicate with at numerous different agents of Defendants, none of which were familiar with her file and circumstances, gave her inconsistent and contradictory information, and lost and misplaced her documentation and whole applications.

e.  Civil Code § 2924f: Defendants negligently failed to physically post a copy of the Notice of Trustee's Sale on the Subject Property or mail Ms. Ng a copy of the Notice of Trustee's Sale.

f.  Civil Code § 2924.10: Defendants negligently failed to timely acknowledge receipt of Ms. Ng's February 2014, October 2014, March 2015, and August 2015 loan modification applications, and supplemental documentation, and timely inform Ms. Ng of the processes, expiration dates, deadlines, and deficiencies associated with her loan modification applications.

g.  Civil Code § 2924.17: Defendants negligently recorded the Notice of Default and Notice of Trustee's Sale without accurate, complete, competent, and reliable evidence substantiating Ms. Ng's default and Defendants' right to foreclose on the Property, especially given the fact that (1) Defendants failed to contact Ms. Ng to assess her financial situation **and** explore her non-foreclosure alternatives, or inform Ms. Ng that she may request various documents from Defendants (a violation of Civil Code §

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

2923.55); (2) Defendants recorded the Notice of Default while Ms. Ng's March 2015 loan modification application was pending review (a violation of Civil Code § 2923.6); (3) Defendants recorded the Notice of Trustee's Sale while Ms. Ng's August 2015 loan modification application was pending review (a violation of Civil Code § 2923.6); (4) Defendants intend on proceeding with the October 15, 2015 trustee's sale of the Property despite Ms. Ng's August 2015 loan modification application currently pending review (a violation of Civil Code § 2923.6); (5) Defendants failed to assign Ms. Ng a single point of contact that is responsible for communicating the foreclosure processes, coordinating receipt of documents, having access to current information and sufficient personnel, ensuring all foreclosure prevention alternatives offered are considered, as well as having access to individuals with the ability and authority to stop foreclosure proceedings (a violation of Civil Code § 2923.7); (6) Defendants failed to physically post a copy of the Notice of Trustee's Sale on the Property or mail Ms. Ng a copy (a violation of Civil Code § 2924f); (7) Defendants failed to timely acknowledge receipt of Ms. Ng's February 2014, October 2014, March 2015, and August 2015 loan modification applications and supplemental documentation, and timely inform Ms. Ng of the processes, expiration dates, deadlines, and deficiencies associated with her loan modification applications (a violation of Civil Code § 2924.10).

h.   Dual tracking: Defendants negligently recorded the Notice of Default and Notice of Trustee's Sale while Ms. Ng's March 2015 and August 2015 loan modification applications, respectively, were pending review.

i.   Defendants negligently handled Ms. Ng's loan modification applications by unreasonably delaying the review process by (1) mishandling and losing Ms. Ng's documentation and applications; (2) requiring Ms. Ng to re-submit duplicative documentation and new applications; and (3) failing to properly transfer applications during the transfer of loan servicers.

///

///

– 36 –
**VERIFIED COMPLAINT**

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

153.  Defendants' breach was the actual and proximate cause of the foreclosure proceedings against the Property, as well as depriving Ms. Ng of a meaningful opportunity to prevent foreclosure and cure her default.

154.  Defendants assumed a duty of due care in reviewing and servicing Ms. Ng's applications for loss mitigations options, and are obligated to conduct handle Ms. Ng's mortgage account in good faith and deal with her fairly. Ms. Ng would have been able to avoid foreclosure proceedings if Defendants acted reasonably and prudently with respect to Ms. Ng's account.

155.  Defendants' actions denied Ms. Ng any opportunity to avoid the foreclosure of her home through non-foreclosure options available to her, such as loan modification, bankruptcy, and short sale. Defendants' actions, therefore, are a substantial factor and proximate and actual cause of the resulting foreclosure proceedings.

156.  Defendants' violations of these statutes directly and proximately caused the injuries suffered by Ms. Ng. Had Defendants complied with the law to begin with, Ms. Ng would not have suffered the very injuries that give rise to this Complaint because she would have been able to successfully pursue and obtain a non-foreclosure alternative and become current on her loan. Furthermore, Defendants' violations are the factual and proximate cause of the injuries suffered by Ms. Ng because her attempts to pursue and obtain a non-foreclosure alternative were unreasonably handled by Defendants and, in fact, Defendants affirmatively interfered with Ms. Ng's ability to avoid foreclosure and cure her default.

157.  But for Defendants' negligence, Ms. Ng default amount would have been cured and her home loan reinstated. More importantly, but for Defendants' negligence, no foreclosure proceedings would have transpired.

158.  Ms. Ng stands to suffer imminent and further damages as a result of the breaches set forth above, in the form of a wrongful foreclosure of the Property. If the Property is conveyed to a third-party bona-fide purchaser, then Ms. Ng will have no recourse in recovering the Property, despite Defendants' unlawful acts set forth above.

///

///

– 37 –

159.    Additionally, due to Defendants' negligent misconduct, Ms. Ms. Ng has been injured in that her credit has been severely damaged; her home is subject to imminent foreclosure and her and her son are subject to subsequent eviction; health issues; loss of her reputation; thousands of dollars in Defendants' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper amounts added to Ms. Ng's arrears that keep increasing due to Defendants' misconduct; expending at least $15,000.00 in order to protect her real property rights; and additional amounts, according to proof at the time of trial, all in excess of the jurisdictional minimum of this Court.

## EIGHTH CAUSE OF ACTION

### Violation of California Business & Professions Code § 17200

(Against All Defendants)

160.    Ms. Ng re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

161.    California Business & Professions Code § 17200 et seq., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

162.    The conduct and business practices of Defendants, and their agents, alleged herein, constituted unfair and unlawful business practices within the provisions of California Business & Professions Code § 17200 et seq. As such, Defendants, and each of them, are liable for the unfair, unlawful, and fraudulent conduct of itself, its agents, and its predecessors.

///

///

///

///

///

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

– 38 –

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

**VIOLATIONS OF BUS. & PROF. CODE § 17200 BASED ON "UNFAIR" CONDUCT**

163. Defendants', and their agents', conduct was **unfair** in that it threatens and violates the policy or spirit of several California Civil Codes, California law, and principles of law, including but not limited to, good faith and fair dealing, because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition. Such unfair business practices by Defendants, include, amongst other things:

   a.   Civil Code § 2923.55(a): Defendants unfairly failed to contact Ms. Ng in order to assess her financial situation and explore foreclosure alternatives at least 30 days before recording the Notice of Default. Also, Defendants negligently failed to provide Ms. Ng with a determination of her March 2015 loan modification application, or advise her of her appeal rights, prior to recording the Notice of Default against the Property.

   b.   Civil Code § 2923.55(b)(1)(B): Prior to recording the Notice of Default, Defendants unfairly failed to inform Ms. Ng, in writing, that she may request (1) a copy of her promissory note or other evidence of indebtedness; (2) a copy of her deed of trust or mortgage; (3) a copy of any assignment of deed of trust required to demonstrate the right of the mortgage servicer to foreclose; and (4) a copy of her payment history since Ms. Ng was last less than 60 days past due.

   c.   Civil Code § 2923.6: Defendants unfairly (1) recorded a Notice of Default on June 3, 2015, despite the fact that Ms. Ng's complete March 2015 loan modification application was pending review; (2) recorded a Notice of Trustee's Sale on September 1, 2015, despite the fact that Ms. Ng's complete August 2015 loan modification application was pending review; (3) recorded a Notice of Default on June 3, 2015 without first providing Ms. Ng a written determination of her March 2015 loan modification application, or advising her of her appeal rights in writing; (4) recorded a Notice of Trustee's Sale on September 1, 2015 without first providing Ms. Ng a written determination of her August 2015 loan modification application, or advised her of her appeal rights in writing; and (5) scheduled foreclosure sale, set for October 15, 2015 (*see* **Exhibit I**) despite the fact that Ms. Ng's August 2015 loan modification is still

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

1    pending review.

2    d.    Civil Code § 2923.7: Defendants unfairly failed to provide Ms. Ng with a single point

3          of contact who is familiar with her file and circumstances, as required under Civil Code

4          § 2923.7, because Defendants failed to (1) communicate available foreclosure

5          prevention alternative, their processes; and deadlines; (2) coordinate the receipt of all

6          Ms. Ng's documents associated with the loan modification application process and

7          notify Ms. Ng of any missing documents necessary to complete the process; (3) have

8          access to current information and personnel sufficient to timely, accurately, and

9          adequately inform Ms. Ng of the current status of the foreclosure prevention

10         alternative; (4) ensure that Ms. Ng was considered for all foreclosure prevention

11         alternatives offered by Defendants; and (5) have access to individuals with the ability

12         and authority to stop foreclosure proceedings, and, instead, required Ms. Ng to

13         communicate with at numerous different agents of Defendants, none of which were

14         familiar with her file and circumstances, gave her inconsistent and contradictory

15         information, and lost and misplaced her documentation and whole applications.

16   e.    Civil Code § 2924f: Defendants unfairly failed to physically post a copy of the

17         Notice of Trustee's Sale on the Subject Property or mail Ms. Ng a copy of the

18         Notice of Trustee's Sale.

19   f.    Civil Code § 2924.10: Defendants unfairly failed to timely acknowledge receipt of

20         Ms. Ng's February 2014, October 2014, March 2015, and August 2015 loan

21         modification applications, and supplemental documentation, and timely inform Ms.

22         Ng of the processes, expiration dates, deadlines, and deficiencies associated with

23         her loan modification applications.

24   g.    Civil Code § 2924.17: Defendants unfairly recorded the Notice of Default and Notice

25         of Trustee's Sale without accurate, complete, competent, and reliable evidence

26         substantiating Ms. Ng's default and Defendants' right to foreclose on the Property,

27         especially given the fact that (1) Defendants unfairly failed to contact Ms. Ng to assess

28         her financial situation **and** explore her non-foreclosure alternatives, or inform Ms. Ng

– 40 –
**VERIFIED COMPLAINT**

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

that she may request various documents from Defendants (a violation of Civil Code § 2923.55); (2) Defendants unfairly recorded the Notice of Default while Ms. Ng's March 2015 loan modification application was pending review (a violation of Civil Code § 2923.6); (3) Defendants unfairly recorded the Notice of Trustee's Sale while Ms. Ng's August 2015 loan modification application was pending review (a violation of Civil Code § 2923.6); (4) Defendants unfairly intend to proceed with the October 15, 2015 trustee's sale of the Property despite Ms. Ng's August 2015 loan modification application currently pending review (a violation of Civil Code § 2923.6); (5) Defendants unfairly failed to assign Ms. Ng a single point of contact that is responsible for communicating the foreclosure processes, coordinating receipt of documents, having access to current information and sufficient personnel, ensuring all foreclosure prevention alternatives offered are considered, as well as having access to individuals with the ability and authority to stop foreclosure proceedings (a violation of Civil Code § 2923.7); (6) Defendants unfairly failed to physically post a copy of the Notice of Trustee's Sale on the Property or mail Ms. Ng a copy (a violation of Civil Code § 2924f); and (7) Defendants unfairly failed to timely acknowledge receipt of Ms. Ng's February 2014, October 2014, March 2015, and August 2015 loan modification applications and supplemental documentation, and timely inform Ms. Ng of the processes, expiration dates, deadlines, and deficiencies associated with her loan modification applications (a violation of Civil Code § 2924.10).

h.   Dual tracking: Defendants unfairly recorded the Notice of Default and Notice of Trustee's Sale while Ms. Ng's March 2015 and August 2015 loan modification applications, respectively, were pending review.

i.   Defendants unfairly handled Ms. Ng's loan modification applications by unreasonably delaying the review process by (1) unfairly mishandling and losing Ms. Ng's documentation and applications; (2) unfairly requiring Ms. Ng to re-submit duplicative documentation and new applications; and (3) unfairly failed to properly transfer applications during the transfer of loan servicers.

164.  Defendants', and their agents', conduct and business practices violated Bus. & Prof. Code § 17200 in that their utility is significantly outweighed by the gravity of the harm that it imposes on homeowners. Defendants have alternatives to this conduct that would be less harmful to homeowners and borrowers, but which they do not employ because its present conduct is more profitable and beneficial than these alternatives.

165.  On the same grounds already alleged herein, Defendants violations of Civil Code §§ 2923.55, 2923.6, 2923.7, 2924f, 2924.10, and 2924.17 also violated the policy behind said statutes.

166.  Additionally, the conduct of Defendants, and their agents and through each other, also violates the "unfair" prong because the practice is oppressive, unscrupulous, and/or substantially injurious to borrowers.

## VIOLATIONS OF BUS. & PROF. CODE § 17200 BASED ON "UNLAWFUL" CONDUCT

167.  The business practices engaged and utilized by Defendants, and their agents, were also **unlawful** and in violation of California Civil Codes, California law, and general principles of law through their negligence and utilizing other deceptive business practices with respect to mortgage servicing, foreclosure of residential properties, and related matters by:

168.  Defendants' conduct was unlawful and, therefore, violated Bus. & Prof. Code § 17200. Specifically, Defendants' conduct was unlawful, in violation of Bus. & Prof. Code § 17200, as follows:

a.      Violating Civil Code § 2923.55;

b.      Violating Civil Code § 2923.6;

c.      Violating Civil Code § 2923.7;

d.      Violating Civil Code § 2924f;

e.      Violating Civil Code § 2924.10; and

f.      Violating Civil Code § 2924.17;

/ / /

/ / /

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

169.  Civil Code §§ 2923.55, 2923.6, 2923.7, 2924f, 2924.10, and 2924.17 were enacted by the California legislature specifically to protect the rights of innocent borrowers suffering from financial hardships. These statutes were also enacted by the California legislature specifically to prevent the same injury that Ms. Ng will imminently suffer: **eviction resulting from a wrongful, unlawful, and improper foreclosure**.

170.  As a direct and proximate result of Defendants' unfair, deceptive, fraudulent, and unlawful business practices, Ms. Ng, Defendants' other borrowers, and the public in general have been injured.

171.  The unlawful and unfair business practices of Defendants described herein present a continuing threat to Ms. Ng. The public in general is likely to be deceived into relying on Defendants' prompt and accurate servicing of their mortgage to avoid foreclosure, and Defendants adhering to California's statutory foreclosure scheme. Defendants are likely to persist and continue to engage in these practices, and will not cease doing so unless and until forced to do so by this Court.

172.  Defendants' conduct is causing and will continue to cause irreparable injury to Ms. Ng and the public in general unless enjoined or restrained.

173.  Defendants' Business & Professions Code § 17200 violations and Civil Code violations also in that Defendants have added thousands of dollars in attorney's fees, late fees, and additional costs to Ms. Ng arrears and default amount, as the amount due is now far greater than she owed in or about early 2014.

174.  Additionally, due to Defendants' Business & Professions Code § 17200 violations, Ms. Ng has been injured in that her credit has been severely damaged; her home is subject to imminent foreclosure and her and her son are subject to subsequent eviction; health issues; loss of her reputation; thousands of dollars in Defendants' attorneys' fees, excess interest, late fees, foreclosure fees, and other improper amounts added to Ms. Ng's arrears that keep increasing due to Defendants' misconduct; expending at least $15,000.00 in order to protect her real property rights; and additional amounts, according to proof at the time of trial, all in excess of the jurisdictional minimum of this Court.

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

**PRAYERS FOR RELIEF**

**Preliminary and Permanent Injunction**

(Against All Defendants)

175. Ms. Ng re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

176. Recently, Defendants have affirmatively informed Ms. Ng that they will precede with the October 15, 2015 trustee's sale of the Property despite not having provided Ms. Ng a determination of her August 2015 loan modification application. This is aside from Defendants' wrongful foreclosure activity of recording the Notice of Default and Notice of Trustee's Sale while Ms. Ng's March 2015 and August 2015 loan modification applications, respectively, were pending review. Thus, Defendants have subjected the Property to unlawful foreclosure proceedings and Ms. Ng's imminent loss of the Property via a wrongful trustee's sale.

177. If Ms. Ng's home is allowed to be sold to a bona-fide purchaser, then Ms. Ng will have no means of reestablishing title and residency in the property.

178. If Ms. Ng's home is allowed to be further sold, she will suffer severe and irreparable injury by reason of the wrongful and unlawful foreclosure.

179. Monetary damages will not suffice to make Ms. Ng whole as a result of the unique nature of real property. Accordingly, Ms. Ng has no adequate remedy at law.

180. Ms. Ng is entitled to an injunction until such time that Defendants can verify their compliance with Civil Codes §§ 2923.55, 2923.6, 2923.7, 2924f, 2924.10, and 2924.17.

181. Ms. Ng respectfully requests the Court to enjoin and order Defendants to (1) rescind the Notice of Default; (2) rescind the Notice of Trustee's Sale; (3) prohibit Defendants from continuing foreclosure proceedings against the Property during the pendency of this action; and (4) prohibit Defendants from selling the Property at a trustee's sale during the pendency of this action.

182. Ms. Ng is also entitled to injunctive relief under Business & Professions Code §§ 17200 & 17203. *See Motors, Inc. v. Times Mirror Co.* (1980) 102 Cal. App. 3d 735, 740 (a trial court has broad authority to enjoin conduct that violates Business & Professions Code § 17200).

///

**VERIFIED COMPLAINT**

**PRAYERS FOR RELIEF**

WHEREFORE, Ms. Ng prays for judgment against Defendants as follows:

1.  For damages according to proof;

2.  For damages according to statute;

3.  For restitution;

4.  For reasonable attorneys' fees and costs according to proof;

5.  For reasonable attorneys' fees and costs according to statute;

6.  For an order enjoining Defendants to rescind the Notice of Default;

7.  For an order enjoining Defendants to rescind the Notice of Trustee's Sale;

8.  For an order enjoining and prohibiting Defendants from further continuing foreclosure proceeding against the Property during the pendency of this action;

9.  For an order enjoining and prohibiting Defendants from selling the Property during the pendency of this action; and

10. For such other and further relief as this Court deems just and proper;

DATED: September 9, 2015       **HAROUNI LAW GROUP**

By: _Kaivan Harouni_
Kaivan Harouni
Attorney for Plaintiff
Elizabeth Ng

HAROUNI LAW GROUP
5950 Canoga Avenue, Suite 550, Woodland Hills, California 91367

1

## VERIFICATION

2      I am the Plaintiff in the above-entitled action. I have read the foregoing Complaint and know the

3  contents thereof. The same is true of my own knowledge, except as to those matters which are therein

4  alleged on information and belief, and as to those matters, I believe it to be true.

5      I declare under penalty of perjury under the laws of the State of California that the foregoing is

6  true and correct. Executed in Rancho Cucamonga, California, on this 9th day of September 2015.

7

8  By: _____

9              Elizabeth Ng

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

STEWART TITLE-Riverside



Auditor - Controller - Recorder

**735 Stewart Title Company**

Recording Requested By:
R. VELARDE

Doc #:  **2008-0137058**

| | | | |
|---|---|---|---|
| Titles: | 1 | Pages: | 12 |
| Fees | | | 80.00 |
| Taxes | | | .00 |
| Other | | | .00 |
| PAID | | | 80.00 |

After Recording Return To:
COUNTRYWIDE BANK, FSB

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
DARLENE DUNLAP

—————————————————— [Space Above This Line For Recording Data] ——————————————————

9678BB
[Escrow/Closing #]

00019094376403008
[Doc ID #]

# DEED OF TRUST

MIN 1001337-0002994521-2

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)  "Security Instrument"** means this document, which is dated   MARCH 22, 2008   , together with all Riders to this document.
**(B)  "Borrower"** is
ELIZABETH NG, A SINGLE WOMAN

Borrower's address is
11933 TIMBER MOUNTAIN CT, RANCHO CUCAMONGA, CA 91739-2350
Borrower is the trustor under this Security Instrument.

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

MERS Deed of Trust-CA
1006A-CA (02/08)(d/i)

Page 1 of 12

Form 3005 1/01



* 2 3 9 9 1 *



* 1 9 0 9 4 3 7 6 4 0 0 0 0 0 1 0 0 6 A *

**(C)** "**Lender**" is
COUNTRYWIDE BANK, FSB
Lender is a FED SVGS BANK
organized and existing under the laws of THE UNITED STATES
Lender's address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
**(D)** "**Trustee**" is
RECONTRUST COMPANY
225 W HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
**(E)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)** "**Note**" means the promissory note signed by Borrower and dated MARCH 22, 2008 . The Note states that Borrower owes Lender
THREE HUNDRED EIGHT THOUSAND and 00/100

Dollars (U.S. $ 308,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than APRIL 01, 2038 .
**(G)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
**(H)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(I)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ Second Home Rider
☐ Balloon Rider ☐ Planned Unit Development Rider ☐ 1-4 Family Rider
☐ VA Rider ☐ Biweekly Payment Rider ☐ Other(s) [specify]

**(J)** "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(K)** "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(L)** "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(M)** "**Escrow Items**" means those items that are described in Section 3.
**(N)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(O)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(P)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(Q)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(R)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

DOC ID #: 00019094376403008

TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  |  |  |  |
|---|---|---|---|
| COUNTY | of | SAN BERNARDINO | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

LOT 21 OF TRACT NO. 13835, IN THE CITY OF RANCHO CUCAMONGA, COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER PLAT RECORDED IN BOOK 262 OF MAPS, PAGES 14 TO 18, INCLUSIVE, RECORDS OF SAID COUNTY.

Parcel ID Number: 0225501210000                                       which currently has the address of
                        11933 TIMBER MOUNTAIN CT, RANCHO CUCAMONGA                          ,
                                        [Street/City]
California 91739-2350 ("Property Address"):
          [Zip Code]

　　TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

　　BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

　　THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

　　UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
　　**1.　Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

　　Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim

DOC ID #: 00019094376403008

which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

   **2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

   If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

   Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

   **3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

   Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

   The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

   If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

   Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

DOC ID #: 00019094376403008

   **4.   Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

   Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

   Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

   **5.   Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

   If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

   All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

   In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

   If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim,

DOC ID #: 00019094376403008

then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise. Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.　Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7.　Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.　Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.　Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.　Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and

DOC ID #: 00019094376403008

retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

DOC ID #: 00019094376403008

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice

DOC ID #: 00019094376403008

in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time

DOC ID #: 0001909437640300 8

period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security

DOC ID #: 00019094376403008

Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
ELIZABETH NG                          -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

DOC ID #: 00019094376403008

State of California

County of *San Bernardino*

On *3/24/08* before me, *BONNIE L. Buche, NOTARY Public* .
personally appeared
*ELIZABETH Ng*

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature *Bonnie L. Buche* (Seal)



BONNIE L. BUCHE
Commission # 1571390
Notary Public - California
San Bernardino County
My Comm. Expires May 16, 2009

# EXHIBIT B

RECORDING REQUESTED BY:
RECONTRUST COMPANY

AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

ATTN: Wally Davidson
TS No. 11-0055574

*11- 0046154*

Recorded in Official Records, County of San Bernardino    7/14/2011
8:00 AM
**DENNIS DRAEGER**    BGJ
ASSESSOR – RECORDER – CLERK

771 Document Processing Solutions



Doc#: **2011–0286086**

| Titles: | 1 | Pages: | 1 |
|---|---|---|---|
| Fees | | | 18.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $18.00 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## SUBSTITUTION OF TRUSTEE

WHEREAS, ELIZABETH NG, A SINGLE WOMAN was the original Trustor, RECONTRUST COMPANY was the original Trustee, and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. was the original Beneficiary under that certain Deed of Trust dated 03/22/2008 recorded on 03/28/2008 as Instrument No. 2008-0137058 in Book  Page  of Official Records of San Bernardino County, California;

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW THEREFORE, the undersigned hereby substitutes RECONTRUST COMPANY, N.A., WHOSE ADDRESS IS: 1800 Tapo Canyon Rd., CA6-914-01-94 SIMI VALLEY, CA  93063, as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

DATED:July 07, 2011

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

)

BY: _____    **JUL 0 8 2011**

Flor Valerio, Assistant Secretary

State of: **CALIFORNIA**
County of: **VENTURA**    )
On **JUL 1 2 2011** before me, **ANN G. MONTEALEGRE** _____, notary public, personally appeared Flor Valerio, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ ~~ANN G. MONTEALEGRE~~    (Seal) .

ANN G. MONTEALEGRE
Commission # 1768259
Notary Public - California
Los Angeles County
My Comm. Expires Sep 16, 2011

*Form sub (08/09)98*

# EXHIBIT C

LANDSAFE TITLE

RECORDING REQUESTED BY:

RECONTRUST COMPANY
**AND WHEN RECORDED MAIL DOCUMENT
AND TAX STATEMENTS TO:**
RECONTRUST COMPANY
1800 Tapo Canyon Rd., CA6-914-01-94
SIMI VALLEY, CA 93063

Recorded In Official Records, County of San Bernardino



**DENNIS DRAEGER**
ASSESSOR – RECORDER – CLERK

**771 Document Processing Solutions**

7/14/2011
8:00 AM
BGJ

Doc#: **2011 – 0286087**



| | | |
|---|---|---|
| Titles: | 1 | Pages: 1 |
| Fees | | 18.00 |
| Taxes | | 0.00 |
| Other | | 0.00 |
| PAID | | $18.00 |

TS No. 11-0055574

*11-0046154*

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## CORPORATION ASSIGNMENT OF DEED OF TRUST/~~MORTGAGE~~

FOR VALUE RECEIVED, THE UNDERSIGNED HEREBY GRANTS, ASSIGNS AND TRANSFER TO:

**BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS SERVICING, LP**

ALL BENEFICIAL INTEREST UNDER THAT CERTAIN DEED OF TRUST DATED 03/22/2008, EXECUTED BY:
ELIZABETH NG, A SINGLE WOMAN, TRUSTOR: TO RECONTRUST COMPANY, TRUSTEE AND RECORDED AS
INSTRUMENT NO. 2008-0137058 ON 03/28/2008, OF OFFICIAL RECORDS IN THE COUNTY RECORDER'S
OFFICE OF SAN BERNARDINO COUNTY, IN THE STATE OF CALIFORNIA.

DESCRIBING THE LAND THEREIN: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

TOGETHER WITH THE NOTE OR NOTES THEREIN DESCRIBED OR REFERRED TO, THE MONEY DUE AND
TO BECOME DUE THEREON WITH INTEREST, AND ALL RIGHTS ACCRUED OR TO ACCRUE UNDER SAID
DEED OF TRUST/MORTGAGE.

DATED: July 07, 2011                     **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

State of:   **CALIFORNIA**   )        BY: _____   JUL 0 8 2011
County of:   **VENTURA**   )            Flor Valerio, Assistant Secretary

On ___JUL 1 2 2011___ before me, ___ANN G. MONTEALEGRE___, notary public, personally appeared
_____Flor Valerio_____, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

ANN G. MONTEALEGRE

ANN G. MONTEALEGRE
Commission # 1768259
Notary Public - California
Los Angeles County
My Comm. Expires Sep 16, 2011

*Form asgnmnt (01/09)*

# EXHIBIT D

 

**Bank of America**

**Home Loans**

C3_733 CRMWLCME 16613 10/25/2012

*CA6-919-01-41*
*P. O. Box 941852*
*SIMI VALLEY, CA 93094-1852*



AT1  8-772-07659-0000109-001-1-000-010-000-000

ELIZABETH NG
11933 TIMBER MOUNTAIN CT
RANCHO CUCAMONGA  CA 91739

**Notice Date:** May 9, 2014

**Account No.:** 190943764

**Property Address:**
11933 TIMBER MOUNTAIN CT
RANCHO CUCAMONGA, CA 91739

Dear ELIZABETH NG,

My name is Craig Macier and I will be your dedicated Customer Relationship Manager. Bank of America, N.A. has several programs designed to help homeowners who are having trouble making their monthly mortgage payment, and it's possible that one could help you. Please review the enclosed brochure for more information.

**What I will provide**

As your Customer Relationship Manager, I will work with you to review your individual situation and help determine which of our programs may be available to you. I will let you know where you are in the loan assistance process, where you've been and what your next steps are. I will be with you the entire time, and you will get periodic status updates from me.

**What I need from you**

One of the most important things you can do to successfully complete the loan assistance process is to provide us with all of the documents we require within the timeline requested. Depending on your individual situation, we will request income and property related documents. Once we determine what program is right for your loan, we will provide you with instructions for the preferred method of submitting those documents to us.

**Next steps**

I will be calling you soon, but in the meantime, if you have questions, you can reach me at 1.800.669.6650 or 1.877.447.4002. Please have your loan number available when you call. Additionally, you can visit **bankofamerica.com/homeloanhelp** to learn about the home loan assistance process.

We know this is a difficult time, and we're here to help.

Craig Macier
Customer Relationship Manager
Bank of America, N.A.

Enclosure

Mortgages funded and administered by an Equal Housing Lender. 🏠
♻ Protect your personal information before recycling this document.

## IMPORTANT DISCLOSURES



Bank of America, N.A., the servicer of your home loan, is required by law to inform you that this communication is from a debt collector.

If you are currently in a bankruptcy proceeding, or have previously obtained a discharge of this debt under applicable bankruptcy law, this notice is for information only and is not an attempt to collect the debt, a demand for payment, or an attempt to impose personal liability for that debt. You are not obligated to discuss your home loan with us or enter into a loan modification or other loan-assistance program. You should consult with your bankruptcy attorney or other advisor about your legal rights and options.

**MILITARY PERSONNEL/SERVICEMEMBERS:** If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to <u>eligible</u> military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at 1.877.430.5434. If you are calling from outside the U.S. please contact us at 1.817.685.6491.

## DIVULGACIONES IMPORTANTES

Bank of America, N.A., el administrador de su préstamo para vivienda está obligado por ley a informarle a usted que esta comunicación proviene de un cobrador de deudas.

Si usted se encuentra actualmente en un procedimiento de quiebra, o ha obtenido previamente una exoneración de esta deuda bajo la ley aplicable sobre quiebra, este no es un intento de recaudación, una demanda de pago o un intento de imponer una responsabilidad personal por esa deuda. Usted no está obligado(a) a hablar de su préstamo para vivienda con nosotros ni a participar en un programa de modificación de préstamos u otro programa de asistencia para préstamos. Usted debe consultar con su abogado especializado en quiebras u otro asesor acerca de sus opciones y derechos legales.

**PERSONAL MILITAR/ MIEMBROS DE LAS FUERZAS ARMADAS:** Si usted o su cónyuge es un miembro del servicio militar, por favor comuníquese con nosotros inmediatamente. La Ley federal de Ayuda Civil para Miembros de las Fuerzas Armadas y las leyes estatales comparables otorgan protecciones y beneficios significativos al personal del servicio militar <u>que califique</u>, incluyendo protecciones contra la ejecución hipotecaria así como también ayuda en la tasa de interés. Para obtener más información y determinar su calificación por favor llame sin costo a nuestro Equipo de Asistencia para el Servicio Militar al 1.877.430.5434. Si usted llama desde fuera de los Estados Unidos por favor comuníquese con nosotros al 1.817.685.6491.

# EXHIBIT E



**Bank of America**

**Home Loans**

P.O. Box 5170
SIMI VALLEY, CA 93062-5170



**IMPORTANT INFORMATION ENCLOSED**

ㄷ|||ㅐㅐ||ㅐ•|ㅐ•||ㅣ|||||ㅐ•ㅐ•|•|•|ㅐ|•ㅐㅣ||ㅐㅣㅐ||ㅐ•|ㅣㅐㅐ•ㅣ•ㅐㅐ•|ㅐ•ㅐㅐㅐ|ㅐ

AT1     6-772-14102-0002863-002-1-000-000-000-000

ELIZABETH NG
11933 TIMBER MOUNTAIN CT
RANCHO CUCAMONGA, CA 91739

Send Correspondence to:
P.O. Box 5170
Simi Valley. CA 93062-5170

Business Address:
450 American Street
Simi Valley, CA 93065-6285

**Notice Date:** October 29, 2014

**Loan No.:** 190943764

**Property Address:**
11933 Timber Mountain CT
Rancho Cucamonga, CA 91739

Dear ELIZABETH NG:

**The servicing of your home loan will transfer to Caliber Home Loans, Inc on November 16, 2014.**

**IMPORTANT INFORMATION ABOUT THE SERVICING OF YOUR HOME LOAN**

On November 16, 2014, the servicing of your above referenced mortgage loan will transfer to Caliber Home Loans, Inc. As of that date your new servicer, Caliber Home Loans, Inc, will support all your loan servicing, including billing, payment processing, and customer support. You will no longer receive mortgage statements from Bank of America; instead, your statements will be sent by your new servicer.

In the mortgage lending industry, the transfer or sale of loan servicing to other servicing institutions is a common practice and we'll work closely with Caliber Home Loans, Inc to make the transition as smooth as possible. If you have any questions or concerns regarding this transfer, we're available to answer your questions Monday-Friday 7a.m. to 7p.m. Local Time at 1-800-669-6607.

**WHAT YOU NEED TO KNOW**

**If you are currently being considered for a loan modification or other foreclosure avoidance program,** your new servicer Caliber Home Loans, Inc is aware of your current status and will have all of your documents. Please contact Caliber Home Loans, Inc to complete the process and determine which programs may best suit your current situation. For more information on working with Caliber Home Loans, Inc, please review the frequently asked questions below.

**The enclosed notice outlines the important dates and contact information you'll need for the transition** to Caliber Home Loans, Inc. Please note this servicing transfer only applies to the above referenced loan.

**ANSWERS TO QUESTIONS YOU MAY HAVE**

**What will change with my servicing transfer?**
- Your loan number and payment address information will change once your loan has been transferred. Please look for a letter from Caliber Home Loans, Inc within the next few weeks which will outline this important information.
- The transfer of your loan to Caliber Home Loans, Inc does not affect any terms or conditions of your mortgage loan, other than those terms directly related to the servicing of the loan.
- Your monthly payment will not be affected by this transfer.

**Will the quality of my loan service change?**
- We expect that the quality of your loan service will not change. We are transferring servicing on your loan to Caliber Home Loans, Inc, an experienced mortgage servicer who will work with you on your mortgage concerns.

**Where should I make my home loan payments?**
- You should continue to make your monthly payment to Bank of America through November 15, 2014. You will begin making payments to Caliber Home Loans, Inc on November 16, 2014.
- If you do not receive a billing statement from Caliber Home Loans, Inc before the payment is due, write your new loan number on your check and mail it to the payment address shown on the enclosed notice. Please note, if you do not have the new loan number, you may write your old Bank of America loan number on the check.

**What if I have automatic payments set up with Bank of America?**
- Any automatic payments set up with us through the PayPlan programs will be discontinued as of November 15, 2014. Please look for

instructions from Caliber Home Loans, Inc or contact them on or after November 16, 2014 to determine what payment options they may offer.

**Will I still be able to make my mortgage payment at a Bank of America banking center or through online banking?**

- You will no longer be able to make your payment at a Bank of America banking center for the mortgage loan being transferred.
- If you make payments through Bank of America Online Banking or any other online banking or bill payment service, you will need to update your loan number and payee information for Caliber Home Loans, Inc on or after November 16, 2014.

**When my loan is transferred, will I still have access to my online loan information through Bank of America?**

- After the transfer is complete, your mortgage account will be moved to Caliber Home Loans, Inc. As a result, you will no longer access your mortgage information through Bank of America. Prior to the transfer, you may choose to download any information currently online to keep for your own records, such as tax documents, mortgage statements, payment history, etc. Caliber Home Loans, Inc will be able to provide you with information about access to your loan account information following the transfer. If you have any other accounts with Bank of America, such as checking, savings or credit card, you will still be able to access those accounts through Bank of America's online banking.

**How will the service transfer affect my other Bank of America accounts?**

- There will be no change to any additional accounts you have with us.
- If you have a Bank of America Advantage, Premium or Preferred checking account, and you're not charged a monthly fee on your account because your mortgage is with us, this will not change with the transfer of your mortgage to another servicer. We'll let you know in writing if this changes in the future.

### SEE REVERSE SIDE FOR IMPORTANT INFORMATION

**What if I am currently participating in a loan modification or other foreclosure avoidance program (e.g., forbearance, short sale, refinance or deed in lieu of foreclosure)?**

- The loan assistance programs that are offered by Caliber Home Loans, Inc are determined by the owner (also known as the investor) or insurer of your loan. Where applicable, Caliber Home Loans, Inc has agreed to evaluate your loan under the same investor or insurer guidelines as Bank of America, N.A..
- We will transfer any supporting documentation you may have submitted to us to Caliber Home Loans, Inc. We encourage you to work with Caliber Home Loans, Inc to complete the process and determine which programs may best suit your current situation.
- You should continue to make your payments to Bank of America, N.A. through November 15, 2014. On or after November 16, 2014, your payments should be made to Caliber Home Loans, Inc unless you are provided additional direction.
- If your loan was awaiting a decision regarding qualification for these programs, that decision will now be made by Caliber Home Loans, Inc.

**What if I need loan assistance after the transfer?**

- If you experience a hardship and struggle with making your home loan payments after the servicing of your loan has been transferred, please contact Caliber Home Loans, Inc right away to request help. They will determine which program may be right for you based on the applicable investor and insurer guidelines.

**What if I am refinancing my mortgage loan that is being transferred?**

- Your refinance will not be affected by the upcoming loan transfer. If you are working on a refinance through Bank of America Home Loans, your application remains active and we will continue to work with you on your refinance. Please contact the Mortgage Loan Officer or Loan Processor you have been working with if you have any questions.

**What about my optional <u>insurance</u> products with or through Bank of America?**

- If your payments include amounts for any optional insurance products such as credit insurance, accidental death insurance, etc., please read the "Information About Optional Insurance Products" section in the enclosed notice carefully.

**What about my other (<u>non-insurance</u>) optional products with or through Bank of America?**

- If your payments include amounts for any other optional products you have purchased such as home warranty, identity theft protection, etc., we will no longer make payments to the optional product provider on your behalf. As a result, your optional product may be cancelled unless you are able to make alternative arrangements to pay the amounts due. To see if it is possible to establish another payment method and maintain your optional products, you will need to contact your optional product provider.
- Please note, if you have an optional Borrowers Protection or Line Protection Plan®, this Plan will cancel when the servicing of your loan is transferred and you will receive a separate communication from us confirming the cancellation of your Plan. If you have any questions about an existing Protection Plan® benefit, please contact Protection Plan Services. Your provider contact information may be found on your monthly mortgage statement. If you have more than two optional products, they may not all be listed on your monthly mortgage statement. If you are unsure about how many optional products you have or you have questions about your products, please contact Bank of America.

---

### LEGAL NOTICE OF SERVICING TRANSFER

We've also enclosed a Notice of Servicing Transfer which we are required to send to you under federal law. No action is required on your part in response to the notice, but this notice will contain important information about the servicing transfer for your loan and we recommend you retain the notice for your records. We encourage you to review this important information to determine if there are actions you need to take before or after the servicing transfer is complete. Your new servicer will be sending additional information soon regarding any necessary actions.

---

### WE'RE HERE TO HELP

Thank you for the opportunity to serve your home loan needs. If you have any questions or need assistance prior to your loan transfer, please call us toll free at 1-800-669-6607, Monday-Friday 7a.m. to 7p.m. Local Time.

Beginning November 16, 2014, Caliber Home Loans, Inc can assist you with any questions related to your home loan and the transfer of servicing. Caliber Home Loans, Inc's customer service number is 1-800-570-6768, Monday - Thursday, 8:00 a.m. to 9:00 p.m. Central Standard Time and Friday, 8:00 a.m. to 7:00 p.m. Central Standard Time.

Home Loan Team
Bank of America, N.A.

<u>MILITARY PERSONNEL/SERVICEMEMBERS:</u> If you or your spouse is a member of the military, please contact us immediately. The federal Servicemembers Civil Relief Act and comparable state laws afford significant protections and benefits to <u>eligible</u> military service personnel, including protections from foreclosure as well as interest rate relief. For additional information and to determine eligibility please contact our Military Assistance Team toll free at 1.877.430.5434. If you are calling from outside the U.S. please contact us at 1.817.685.6491.

Loan No.: 190943764                                      Notice Date: October 29, 2014

## NOTICE OF SERVICING TRANSFER



You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, will be assigned, sold or transferred from **Bank of America, N.A.** to **Caliber Home Loans, Inc**, effective December 01, 2014.

The transfer of the servicing of your mortgage loan does not affect any terms or conditions of the mortgage instruments, other than those terms directly related to the servicing of your loan. Except in limited circumstances, federal law requires that your present servicer send you this notice at least 15 calendar days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 calendar days after this effective date or at closing.

### YOUR SERVICER PRIOR TO NOVEMBER 16, 2014:

Your *present servicer* is **Bank of America, N.A.**. If you have any questions relating to the transfer of servicing from your present servicer, please call **Bank of America, N.A.** Customer Service at 1-800-669-6607, Monday-Friday 7a.m. to 7p.m. Local Time. This is a toll-free number. The address to send written questions to your present servicer relating to the transfer of servicing of your mortgage loan (but not your loan payments) is: Customer Service Correspondence, P.O. Box 5170, Simi Valley, CA 93062-5170.

### YOUR NEW SERVICER ON AND AFTER NOVEMBER 16, 2014:

Your *new servicer* will be **Caliber Home Loans, Inc**.

Toll-free Number for Questions Related to Servicing Transfer
The toll-free telephone number of **Caliber Home Loans, Inc** is 1-800-570-6768. If you have any questions relating to the transfer of servicing to your new servicer, please call **Caliber Home Loans, Inc** Customer Service toll-free at 1-800-570-6768, Monday - Thursday, 8:00 a.m. to 9:00 p.m. Central Standard Time and Friday, 8:00 a.m. to 7:00 p.m. Central Standard Time.

Address for Written Questions Related to Servicing Transfer
The address to send written correspondence questions to your new servicer relating to the transfer of servicing of your mortgage loan to **Caliber Home Loans, Inc** (other than payments) is:
Caliber Home Loans, Inc, P.O Box 24610 Oklahoma City OK 73124-0610.

Address for Mailed Payments
The address to send payments to **Caliber Home Loans, Inc** is:
Caliber Home Loans, Inc, P.O. Box 650856 Dallas TX 75265-0856. Please include your loan number on all checks, cashier's checks and other payments sent to **Caliber Home Loans, Inc**.

### INFORMATION CONCERNING YOUR LOAN PAYMENTS:

The date that **Bank of America, N.A.** will stop accepting payments from you is November 15, 2014.

The date that your *new servicer* **Caliber Home Loans, Inc** will start accepting payments from you is November 16, 2014. Send all payments due on or after that date to your *new servicer*.

### INFORMATION ABOUT OPTIONAL INSURANCE PRODUCTS:

The transfer of servicing may affect the terms of or the continued availability of credit insurance, accidental death insurance or any other type of optional insurance in the following manner: **Bank of America, N.A.** will no longer make payments to the insurance company on your behalf. As a result, your coverage may be cancelled.

To see if it is possible to maintain coverage, you will need to contact your insurance provider to find out if you are still eligible to receive the coverage and/or to arrange another payment method.

### TREATMENT OF PAYMENTS FOR THE 60 DAYS AFTER SERVICING TRANSFER:

Under federal law, during the 60-day period beginning the effective date of the transfer of the servicing of your mortgage loan, a loan payment received by current servicer on or before its due date may not be treated by the new servicer as late and a late fee may not be imposed on you.

EXHIBIT F

Recorded in Official Records, County of San Bernardino



**BOB DUTTON**
ASSESSOR – RECORDER – CLERK

4/16/2015
10:17 AM
ALS
SAN

Recording Requested By:
**T.D. SERVICE COMPANY**

**C Priority Mail**

And When Recorded Mail To:
**T.D. Service Company**
**LR Department (Cust# 673)**
**4000 W Metropolitan Dr Ste 400**
**Orange, CA 92868**

| Doc#: | 2015 – 0150230 | Titles: | 1 | Pages: | 2 |
|---|---|---|---|---|---|
| | | Fees | | 28.00 | |
| | | Taxes | | 0.00 | |
| | | Other | | 0.00 | |
| | | PAID | | $28.00 | |

_____ Space above for Recorder's use _____

Customer#: 673/2   Service#: 4148557AS1

Loan#: 9803813543

## ASSIGNMENT OF DEED OF TRUST

FOR VALUE RECEIVED, **BANK OF AMERICA, NA SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS, SERVICING, LP, C/O CALIBER HOME LOANS, INC. 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134-2550,** hereby assign and transfer to **U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST, C/O CALIBER HOME LOANS, INC. 13801 WIRELESS WAY, OKLAHOMA CITY, OK 73134-2550,** all its right, title and interest in and to said Deed of Trust in the amount of **$308,000.00,** recorded in the State of **CALIFORNIA,** County of **SAN BERNARDINO** Official Records, dated **MARCH 22, 2008** and recorded on **MARCH 28, 2008, as Instrument No. 2008-0137058, in Book No. ---, at Page No. ---.**
Executed by **ELIZABETH NG, A SINGLE WOMAN,** as trustors, **RECONTRUST COMPANY,** as trustee and, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. AS NOMINEE FOR COUNTRYWIDE BANK, FSB, ITS SUCCESSORS AND ASSIGNS** as the original beneficiary. Legal Description: **As more fully described in said Deed of Trust.**

Loan#: 9803813543      Srv#: 4148557AS1
Page 2

Date: **APR 0 7 2015**

**BANK OF AMERICA, NA SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS, SERVICING, LP, BY CALIBER HOME LOANS, INC., AS ITS ATTORNEY IN FACT**

By: _____

**Michelle Hess, Assistant Secretary**

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of      **CALIFORNIA**                    }
County of    **ORANGE**                          } ss.

On ___**APR 0 7 2015**___, before me, **Julian Yanez**, a Notary Public, personally appeared  **Michelle Hess**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies) and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
Witness my hand and official seal.

_____
(Notary Name): Julian Yanez

> **JULIAN YANEZ**
> Commission # 2014006
> Notary Public - California
> Orange County
> My Comm. Expires Mar 22, 2017

Page 81

# EXHIBIT G

Electronically Recorded in Official Records, County of San Bernardino   6/03/2015
12:58 PM
NP



**BOB DUTTON**
ASSESSOR · RECORDER · CLERK
433 Service Link

Recording requested by:
**ServiceLink**
When recorded mail to:

**Caliber Home Loans – FCL Dept.**
**16745 W. Bernardo Drive, Ste 300**
**San Diego, CA 92127**

Doc #: **2015-0229792**

| Titles: | 1 | Pages: | 2 |
|---|---|---|---|
| Fees | | | 28.00 |
| Taxes | | | .00 |
| Other | | | .00 |
| **PAID** | | | **28.00** |

pace above this line for recorders use

TS No.: CA-15-4989-CS        Order No.: 150151876-CA-VOI

## Substitution of Trustee

WHEREAS, **ELIZABETH NG, A SINGLE WOMAN** was the original Trustor**, RECONTRUST COMPANY** was the original Trustee, and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., SOLELY AS NOMINEE FOR COUNTRYWIDE BANK, FSB, ITS SUCCESSORS AND ASSIGNS** was the original Beneficiary under that certain Deed of Trust dated **3/22/2008** and recorded on **3/28/2008** as Instrument No. **2008-0137058**, in book **XXX**, page **XXX** of Official Records of **SAN BERNARDINO** County, **CA**; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and stead of said original Trustee, or Successor Trustee, thereunder, in the manner provided for in said Deed of Trust,

NOW, THEREFORE, the undersigned hereby substitutes **SUMMIT MANAGEMENT COMPANY, LLC**, whose address is **16745 W. Bernardo Dr. Suite 100, San Diego, CA 92127** as Trustee under said Deed of Trust.

Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Page 1

Substitution of Trustee - CA
TS # CA-15-4989-CS
Page 2

Dated: _6/2/15_

**U.S. Bank Trust, N.A., as Trustee for LSF9 Master Participation Trust, by Caliber Home Loans, Inc., as its attorney in fact**

By: _____
Nhu Tran
Authorized Signatory

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of **California** )
County of **San Diego** )

On June 2, 2015, before me, Sasha Candelaria, a notary public, personally appeared Nhu Tran, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his authorized capacity and that by his/her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

SASHA CANDELARIA
Commission # 2057753
Notary Public - California
San Diego County
My Comm. Expires Feb 13, 2018

Signature _____ (Seal)

Page 84

# EXHIBIT H



APN : 0225-501-21-0-000

Recording requested by:

Summit Trustee

When recorded mail to:
**Caliber Home Loans, Inc. – FCL Dept.**
**16745 W. Bernardo Drive, Ste 300**
**San Diego, CA 92127**

Electronically Recorded in Official Records, County of San Bernardino     6/03/2015 12:58 PM NP

**BOB DUTTON**
ASSESSOR - RECORDER - CLERK
433  Service Link

Doc #: **2015-0229793**

| Titles: | 1 | Pages: | 4 |
|---|---|---|---|
| Fees | | | 34.00 |
| Taxes | | | .00 |
| Other | | | .00 |
| **PAID** | | | **34.00** |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS # CA-15-4989-CS      Order # 150151876-CA-VOI

## NOTICE OF DEFAULT AND ELECTION TO SELL
## UNDER DEED OF TRUST

**[PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.]**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

## IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property.  No sale may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice).

This amount is **$35,290.13** as of **6/2/2015** and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage.  If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.  However, you and your beneficiary or mortgagee may mutually agree in writing prior to the

**Page 2 of 4**

time the notice of sale is posted (which may not be earlier than the three-months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**Caliber Home Loans, Inc.**

**C/O SUMMIT MANAGEMENT COMPANY, LLC**

**16745 W. Bernardo Dr., Ste. 100**

**San Diego, CA 92127**

**(866) 248-2679**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan. Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.

NOTICE IS HEREBY GIVEN: That the undersigned is either the original trustee, the duly appointed substituted trustee, or acting as agent for the trustee or beneficiary under a Deed of Trust dated **3/22/2008**, executed by **ELIZABETH NG , A SINGLE WOMAN**, as Trustor, to secure certain obligations in favor of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR COUNTRYWIDE BANK, FSB**, as beneficiary, recorded **3/28/2008**, as Instrument No. **2008-0137058**, in Book xxx, Page xxx of Official Records in the Office of the Recorder of **SAN BERNARDINO** County, **California** describing land therein: **as more fully described in said Deed of Trust.**

Said obligations including **1** NOTE(S) FOR THE ORIGINAL sum of **$308,000.00**, that the beneficial interest under such Deed of Trust and the obligations secured thereby are presently held by the undersigned; that a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of: **The installments of principal and interest which became due on 1/1/2014, and all subsequent installments of principal and interest through the date of this Notice, plus amounts that are due for late charges, delinquent property taxes, insurance premiums, advances made on senior liens, taxes and/or insurance, trustee's fees, and any attorney fees and court costs arising from or associated with the beneficiaries efforts to protect and preserve its security, all of which must be paid as a condition of reinstatement, including all sums that shall accrue through reinstatement or pay-off. Nothing in this notice shall be construed as a waiver of any fees owing to the Beneficiary under the Deed of Trust pursuant to the terms of the loan documents.**

**The undersigned mortgagee, beneficiary or authorized agent for the mortgagee or beneficiary pursuant to the California Civil Code 2923.5(b) declares under penalty of perjury that the mortgagee, beneficiary or the mortgagee's or beneficiary's authorized agent either contacted the borrower or tried with due diligence to contact the borrower as required by California Civil Code § 2923.5, or the borrower has surrendered the property to the beneficiary of authorized agent, or is otherwise exempt from the requirements of § 2923.5**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby

Page 3 of 4

immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: 6/2/2015          **SUMMIT MANAGEMENT COMPANY, LLC**

Cecilia Stewart, Trustee Sale Officer

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holder's rights against the real property only.

**THIS OFFICE IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

**(DECLARATION ATTACHED)**

**CALIFORNIA DECLARATION OF COMPLIANCE WITH (CAL. CIV. CODE § 2923.55(C))**

Borrower(s): ELIZABETH NG

Property: 11933 TIMBER MOUNTAIN CT
RANCHO CUCAMONGA     CA 91739

Loan No.: 9803813543

Trustee Sale No.: _____

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares as follows:

**1.** [ ] The mortgage servicer has contacted the borrower to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure as required by California Civil Code § 2923.55(b)(2). Initial contact was made on _____.

**2.** [X] The mortgage servicer has tried with due diligence to contact the borrower as required by California Civil Code § 2923.55(f) but has not made contact despite such due diligence. The due diligence efforts were satisfied on____1/29/15____.

**3.** [ ] No contact was required because the individual did not meet the definition of ''borrower'' under California Civil Code § 2920.5(c).

**4.** [ ] The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of trust on ''owner-occupied'' residential real property as defined by California Civil Code § 2924.15.

I certify that this declaration is accurate, complete and supported by competent and reliable evidence which the mortgage servicer has reviewed to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Dated: 05/28/15

Caliber Home Loans, Inc.

_____
Signature of Agent or Employee

Desarey Dearinger
Printed Name of Agent or Employee

Pre-FC Supervisor
Title of Agent or Employee

# EXHIBIT I

Electronically Recorded in Official Records, County of San Bernardino    9/01/2015
                                                                         02:26 PM
                                                                         CG



**BOB DUTTON**
ASSESSOR - RECORDER - CLERK
433 Service Link

Recording requested by:
SUMMIT MANAGEMENT COMPANY, LLC

When recorded mail to:
**Caliber Home Loans, Inc. — FCL Dept.**
**16745 W. Bernardo Drive, Ste 300**
**San Diego, CA 92127**

Doc #: **2015-0377129**



| Titles: | 1 | Pages: | 2 |
|---|---|---|---|
| Fees | | | 28.00 |
| Taxes | | | .00 |
| Other | | | .00 |
| **PAID** | | | **28.00** |

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

TS # CA-15-4989-CS        Order # 150151876-CA-VOI        Loan # 9803813543

## NOTICE OF TRUSTEE'S SALE

**[PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO
BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE
COPIES PROVIDED TO THE TRUSTOR.]**

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 3/22/2008. UNLESS YOU TAKE ACTION TO PROTECT
YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE
PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

A public auction sale to the highest bidder for cash, cashier's check drawn on a state or national bank, check drawn
by state or federal credit union, or a check drawn by a state or federal savings and loan association, or savings
association, or savings bank specified in Section 5102 to the Financial code and authorized to do business in this
state, will be held by duly appointed trustee. The sale will be made, but without covenant or warranty, expressed
or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured
by the Deed of Trust, with interest and late charges thereon, as provided in the note(s), advances, under the terms
of the Deed of Trust, interest thereon, fees, charges and expenses of the Trustee for the total amount (at the time
of the initial publication of the Notice of Sale) reasonably estimated to be set forth below.  The amount may be
greater on the day of sale.

**BENEFICIARY MAY ELECT TO BID LESS THAN THE TOTAL AMOUNT DUE.**

Trustor(s):     **ELIZABETH NG , A SINGLE WOMAN**
Recorded:       **3/28/2008** as Instrument No. **2008-0137058** in book xxx, page xxx of Official Records in the office
                of the Recorder of **SAN BERNARDINO** County, California;

Date of Sale:   **10/15/2015** at 12:00 PM

Place of Sale:  At the North Arrowhead Avenue entrance to the County Courthouse, 351 North Arrowhead Avenue,
                San Bernardino, CA 92401

Amount of unpaid balance and other charges: **$345,556.22**
The purported property address is:     **11933 TIMBER MOUNTAIN CT, RANCHO CUCAMONGA, CA 91739**

Assessor's Parcel No. **0225-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**

**NOTICE TO POTENTIAL BIDDERS**: If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same lender may hold more than one mortgage or deed of trust on the property.

**NOTICE TO PROPERTY OWNER**: The sale date shown on this notice of sale may be postponed one or more times by the mortgagee, beneficiary, trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about trustee sale postponements be made available to you and to the public, as a courtesy to those not present at the sale. If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call **714-730-2727** or visit this Internet Web site **www.servicelinkasap.com**, using the file number assigned to this case **CA-15-4989-CS**. Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site. The best way to verify postponement information is to attend the scheduled sale.

The undersigned Trustee disclaims any liability for any incorrectness of the property address or other common designation, if any, shown herein. If no street address or other common designation is shown, directions to the location of the property may be obtained by sending a written request to the beneficiary within 10 days of the date of first publication of this Notice of Sale.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee, and the successful bidder shall have no further recourse. If the sale is set aside for any reason, the Purchaser at the sale shall be entitled only to a return of the deposit paid. The Purchaser shall have no further recourse against the Mortgagor, the Mortgagee, or the Mortgagee's Attorney.**

Date: **08/28/2015**                    **SUMMIT MANAGEMENT COMPANY, LLC**
                                        **16745 W. Bernardo Dr., Ste. 100**
                                        **San Diego, CA 92127**
                                        **(866) 248-2679  (For NON SALE information only)**
                                        **Sale Line: 714-730-2727**
                                        **or Login to: www.servicelinkasap.com**
                                        **Reinstatement Line: (866) 248-2679**

                                        **CECILIA STEWART, Trustee Sale Officer**

If you have previously been discharged through bankruptcy, you may have been released of personal liability for this loan in which case this letter is intended to exercise the note holders right's against the real property only.

**THIS NOTICE IS SENT FOR THE PURPOSE OF COLLECTING A DEBT. THIS FIRM IS ATTEMPTING TO COLLECT A DEBT ON BEHALF OF THE HOLDER AND OWNER OF THE NOTE. ANY INFORMATION OBTAINED BY OR PROVIDED TO THIS FIRM OR THE CREDITOR WILL BE USED FOR THAT PURPOSE.**

As required by law, you are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit report agency if you fail to fulfill the terms of your credit obligations.

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CALIBER HOME LOANS, INC., a corporation; Additional Parties
Attachment form is Attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ELIZABETH NG, an individual.

*FOR COURT USE ONLY*
*(SOLO PARA USO DE LA CORTE)*

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

SEP 1 0 2015

MANUEL HENRY ANDRIANO
By _____
Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* Superior Court, San Bernardino County

San Bernardino District – Civil Division
247 West Third Street, San Bernardino, CA 92415-0210

| CASE NUMBER: *(Número del Caso):* |
|---|
| CIVDS1512945 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kaivan Harouni, Esq., Harouni Law Group 5950 Canoga Ave. Ste. 550 Woodland Hills, CA 91367
(310) 693-8333

DATE: 09.10.15        SEP 1 0 2015                      Clerk, by   **MANUEL HENRY ANDRIANO**   , Deputy
*(Fecha)*                                              *(Secretario)*                                    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).)*
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

COPY

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☒ on behalf of *(specify):* CALIBER HOME LOANS, INC.

   under: ☒ CCP 416.10 (corporation)         ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| | | |
|---|---|---|
| Form Adopted for Mandatory Use Judicial Council of California SUM-100 (Rev. July 1, 2009) | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465 www.courtinfo.ca.gov |

**SUM-200(A)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| NG v. CALIBER HOME LOANS, INC, et al. | |

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.):*

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

U.S. BANCORP, INC. dba U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER
PARTICIPATION TRUST, an unknown business entity; SUMMIT MANAGEMENT COMPANY, LLC, a
limited liability company; and DOES 1 through 20, inclusive.

Page __1__ of __1__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| — Kaivan Harouni (SBN 256582)<br>Harouni Law Group<br>5950 Canoga Avenue Suite 550<br>Woodland Hills, CA 91367<br>TELEPHONE NO.: 310.693.8333   FAX NO.: 310.494.9499<br>ATTORNEY FOR *(Name)*: Elizabeth Ng | F I L E D<br>SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF SAN BERNARDINO<br>SAN BERNARDINO CIVIL DIVISION<br><br>SEP 1 0 2015<br><br>MANUEL HENRY ANDRIANO<br>By ...............................<br>Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  San Bernardino
STREET ADDRESS: 247 West Third Street
MAILING ADDRESS: same
CITY AND ZIP CODE: San Bernardino, CA 92415-0210
BRANCH NAME: San Bernardino District – Civil Division

CASE NAME:
Elizabeth Ng v. CALIBER HOME LOANS, INC., et al.

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: CIVDS1512945 |
|---|---|---|
| ☑ Unlimited   ☐ Limited<br>(Amount   (Amount<br>demanded   demanded is<br>exceeds $25,000)  $25,000 or less) | ☐ Counter   ☐ Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | JUDGE: BY FAX<br>DEPT |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

**Auto Tort**
- ☐ Auto (22)
- ☐ Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- ☐ Asbestos (04)
- ☐ Product liability (24)
- ☐ Medical malpractice (45)
- ☐ Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- ☐ Business tort/unfair business practice (07)
- ☐ Civil rights (08)
- ☐ Defamation (13)
- ☐ Fraud (16)
- ☐ Intellectual property (19)
- ☐ Professional negligence (25)
- ☐ Other non-PI/PD/WD tort (35)

**Employment**
- ☐ Wrongful termination (36)
- ☐ Other employment (15)

**Contract**
- ☐ Breach of contract/warranty (06)
- ☐ Rule 3.740 collections (09)
- ☐ Other collections (09)
- ☐ Insurance coverage (18)
- ☐ Other contract (37)

**Real Property**
- ☐ Eminent domain/Inverse condemnation (14)
- ☐ Wrongful eviction (33)
- ☑ Other real property (26)

**Unlawful Detainer**
- ☐ Commercial (31)
- ☐ Residential (32)
- ☐ Drugs (38)

**Judicial Review**
- ☐ Asset forfeiture (05)
- ☐ Petition re: arbitration award (11)
- ☐ Writ of mandate (02)
- ☐ Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- ☐ Antitrust/Trade regulation (03)
- ☐ Construction defect (10)
- ☐ Mass tort (40)
- ☐ Securities litigation (28)
- ☐ Environmental/Toxic tort (30)
- ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- ☐ Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- ☐ RICO (27)
- ☐ Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- ☐ Partnership and corporate governance (21)
- ☐ Other petition *(not specified above)* (43)

2. This case ☐ is · ☑ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. ☐ Substantial amount of documentary evidence
   d. ☐ Large number of witnesses
   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. ☐ Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply)*: a. ☑ monetary   b. ☑ nonmonetary; declaratory or injunctive relief   c. ☑ punitive
4. Number of causes of action *(specify)*: EIGHT
5. This case ☐ is  ☑ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: 09.10.15
Kaivan Harouni
_____      ▶ _____
(TYPE OR PRINT NAME)                         (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
  Asbestos Property Damage
  Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
  Medical Malpractice– Physicians & Surgeons
  Other Professional Health Care Malpractice
Other PI/PD/WD (23)
  Premises Liability (e.g., slip and fall)
  Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
  Intentional Infliction of Emotional Distress
  Negligent Infliction of Emotional Distress
  Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
  Legal Malpractice
  Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
  Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
  Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
  Negligent Breach of Contract/ Warranty
  Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
  Collection Case–Seller Plaintiff
  Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
  Auto Subrogation
  Other Coverage
Other Contract (37)
  Contractual Fraud
  Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
  Writ of Possession of Real Property
  Mortgage Foreclosure
  Quiet Title
  Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
  Writ–Administrative Mandamus
  Writ–Mandamus on Limited Court Case Matter
  Writ–Other Limited Court Case Review
Other Judicial Review (39)
  Review of Health Officer Order
  Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
  Abstract of Judgment (Out of County)
  Confession of Judgment *(non-domestic relations)*
  Sister State Judgment
  Administrative Agency Award *(not unpaid taxes)*
  Petition/Certification of Entry of Judgment on Unpaid Taxes
  Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
  Declaratory Relief Only
  Injunctive Relief Only *(non-harassment)*
  Mechanics Lien
  Other Commercial Complaint Case *(non-tort/non-complex)*
  Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
  Civil Harassment
  Workplace Violence
  Elder/Dependent Adult Abuse
  Election Contest
  Petition for Name Change
  Petition for Relief From Late Claim
  Other Civil Petition

 CT Corporation

**Service of Process Transmittal**
09/14/2015
CT Log Number 527815255

TO: Thomas Colatriano
Caliber Home Loans, Inc.
3701 Regent Blvd Ste 200
Irving, TX 75063-2296

RE: **Process Served in California**

FOR: Caliber Home Loans, Inc.  (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Elizabeth NG, etc., Pltf. vs. Caliber Home Loans, Inc., etc., et al., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Instructions, Cover Sheet, Verified Complaint, Verification, Exhibit(s) |
| **COURT/AGENCY:** | San Bernardino County - Superior Court - San Bernardino, CA<br>Case # CIVDS1512945 |
| **NATURE OF ACTION:** | Plaintiff seeking compensatory and punitive damages against defendant due to the violations made by defendant |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/14/2015 at 08:36 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after this summons |
| **ATTORNEY(S) / SENDER(S):** | Kaivan Harouni<br>Harouni Law Group<br>5950 Canoga Ave.<br>Ste. 550<br>Woodland Hills, CA 91367<br>310-693-8333 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 09/15/2015, Expected Purge Date: 09/20/2015<br><br>Image SOP<br><br>Email Notification, Service Process  sop@caliberhomeloans.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>818 West Seventh Street<br>Los Angeles, CA 90017<br>213-337-4615 |

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

9/14/15

SUM-100

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

CALIBER HOME LOANS, INC., a corporation; Additional Parties
Attachment form is Attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ELIZABETH NG, an individual.

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

F I L E D
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN BERNARDINO
SAN BERNARDINO CIVIL DIVISION

SEP 1 0 2015

MANUEL HENRY ANDRIANO
BY _____
Deputy

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court, San Bernardino County <br> San Bernardino District – Civil Division <br> 247 West Third Street, San Bernardino, CA 92415-0210 | CASE NUMBER: *(Número del Caso):* <br> CIVDS1512945 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Kaivan Harouni, Esq., Harouni Law Group 5950 Canoga Ave. Ste. 550 Woodland Hills, CA 91367
(310) 693-8333

DATE: 09.10.15     SEP 1 0 2015     Clerk, by     MANUEL HENRY ANDRIANO     , Deputy
*(Fecha)*     *(Secretario)*     *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons *(form POS-010).*)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

COPY

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☒ on behalf of *(specify)*: SUMMIT MANAGEMENT COMPANY, LLC

   under: ☐ CCP 416.10 (corporation)          ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)          ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☒ other *(specify)*: LLC
4. ☐ by personal delivery on *(date)*:

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

SUM-200(A)

| SHORT TITLE:<br>NG v. CALIBER HOME LOANS, INC, et al. | CASE NUMBER: |
|---|---|

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.

→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☑ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

U.S. BANCORP, INC. dba U.S. BANK TRUST, N.A., AS TRUSTEE FOR LSF9 MASTER PARTICIPATION TRUST, an unknown business entity; SUMMIT MANAGEMENT COMPANY, LLC, a limited liability company; and DOES 1 through 20, inclusive.

Page __1__ . of __1__

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1. 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

 **CT Corporation**

**Service of Process Transmittal**
09/14/2015
CT Log Number 527815347

| | |
|---|---|
| **TO:** | Thomas Colatriano<br>Caliber Home Loans, Inc.<br>3701 Regent Blvd Ste 200<br>Irving, TX 75063-2296 |
| **RE:** | **Process Served in California** |
| **FOR:** | Summit Management Company, LLC  (Domestic State: DE) |

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Elizabeth NG, etc., Pltf. vs. Caliber Home Loans, Inc., etc., et al. including Summit Management Company, LLC, etc., Dfts. |
| **DOCUMENT(S) SERVED:** | Summons, Instructions, Cover Sheet, Verified Complaint, Verification, Exhibit(s) |
| **COURT/AGENCY:** | San Bernardino County - Superior Court - San Bernardino, CA<br>Case # CIVDS1512945 |
| **NATURE OF ACTION:** | Plaintiff seeking compensatory and punitive damages against defendant due to the violations made by defendant |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Los Angeles, CA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 09/14/2015 at 08:40 |
| **JURISDICTION SERVED :** | California |
| **APPEARANCE OR ANSWER DUE:** | Within 30 days after this summons |
| **ATTORNEY(S) / SENDER(S):** | Kaivan Harouni<br>Harouni Law Group<br>5950 Canoga Ave.<br>Ste. 550<br>Woodland Hills, CA 91367<br>310-693-8333 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 09/15/2015, Expected Purge Date: 09/20/2015<br><br>Image SOP<br><br>Email Notification,  Service Process  sop@caliberhomeloans.com |
| **SIGNED:**<br>**ADDRESS:**<br><br>**TELEPHONE:** | C T Corporation System<br>818 West Seventh Street<br>Los Angeles, CA 90017<br>213-337-4615 |

Page 1 of  1 / MJ

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# EXHIBIT B



Home    Complaints/Parties    Actions    Minutes    Pending Hearings    Case Report    Images

Case Type:

Case Number:    [Search]

### Case CIVDS1512945 - ELIZABETH NG -V- CALIBER HOME LOANS, INC.

[Move To This Date]

| Viewed | Date | Action Text | Disposition | Image |
|---|---|---|---|---|
| | 03/07/2016 8:30 AM DEPT. S29 | TRIAL SETTING CONFERENCE - Minutes | | |
| | 10/05/2015 | PROOF OF SERVICE OF SUMMONS AND COMP/PET ON SUMMIT MANAGEMENT COMPANY, LLC,A LIMITED; DEFENDANT/RESPONDENT SERVED ON 09/14/15 WITH COSTS OF $0.00 | Not Applicable | |
| | 10/05/2015 | PROOF OF SERVICE OF SUMMONS AND COMP/PET ON U.S. BANCORP, INC.; DEFENDANT/RESPONDENT SERVED ON 09/14/15 WITH COSTS OF $0.00 | Not Applicable | |
| | 10/05/2015 | PROOF OF SERVICE OF SUMMONS AND COMP/PET ON CALIBER HOME LOANS,INC., A CORPORATION; DEFENDANT/RESPONDENT SERVED ON 09/14/15 WITH COSTS OF $0.00 | Not Applicable | |
| N | 09/11/2015 | CERTIFICATE OF ASSIGNMENT RECEIVED. | Not Applicable | 🖼 |
| N | 09/10/2015 | NOTICE OF NO CERTIFICATE OF ASSIGNMENT ON FILE SENT. | Not Applicable | 🖼 |
| | 09/10/2015 | FILING FEE PAID BY ELIZABETH NG FOR FIRST PAPER FEE | Not Applicable | |
| N | 09/10/2015 | NOTICE IMAGED | Not Applicable | 🖼 |
| | 09/10/2015 | CASE ASSIGNED FOR ALL PURPOSES TO DEPARTMENT S29 | | |
| N | 09/10/2015 | CIVIL CASE COVER SHEET FILED. | Not Applicable | 🖼 |
| N | 09/10/2015 | SUMMONS ISSUED AND FILED | Not Applicable | 🖼 |
| N | 09/10/2015 | COMPLAINT AND PARTY INFORMATION ENTERED | Not Applicable | 🖼 |

Page 102